```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                    Case No. 11-80072-CR-MARRA/HOPKINS
 3

 4   UNITED STATES OF AMERICA,)
                              )
 5           Plaintiff,       )
                              )
 6       -v-                  )
                              )
 7   ROSE MARKS, et al.,      )
                              )
 8           Defendant.       )   West Palm Beach, Florida
                              )   March 8, 2013
 9   _____)   2:30 p.m.

10                  TRANSCRIPT OF MOTION HEARING

11              BEFORE THE HONORABLE JAMES M. HOPKINS

12                   U.S. MAGISTRATE JUDGE

13   Appearances:

14
     For the Government:       ROGER STEFIN
15                             LAURENCE BARDFELD
                               Assistant United States Attorneys
16                             500 East Broward Boulevard
                               Fort Lauderdale, Florida  33301
17
     For the Defendants:       KOPELOWITZ OSTROW FERGUSON
18   Rose Marks                WEISELBERG KEECHL
     Nancy Marks               BY:  FRED SCHWARTZ, ESQ.
19                             700 South Federal Highway
                               Boca Raton, Florida  33432
20

21

22

23   Reporter:                 Karl Shires, RPR, FCRR
     (561) 514-3728            Official Court Reporter
24                             701 Clematis Street, Suite 258
                               West Palm Beach, Florida  33401
25
```

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

1          (Call to Order of the Court.)

2               THE COURT:  Please be seated.

3               Calling United States versus Rose Marks.

4               Counsel please announce your appearances.

5          MR. STEFIN:  Good afternoon, Your Honor.  Roger Stefin

6    and Larry Bardfeld on behalf of the United States.

7               MR. BARDFELD:  Good afternoon, Your Honor.

8               MR. SCHWARTZ:  Good afternoon, Your Honor.  Fred

9    Schwartz, all alone, for Rose Marks.

10              THE COURT:  A rare moment.

11              We're here on a few motions.  The first is the motion

12   to be declared indigent for costs.  And in connection with

13   that, I normally conduct an in camera hearing which is

14   basically a Tjoflat hearing.  And in addition, assuming that

15   the situation -- and that's a hearing to determine if the fees

16   that were collected in this case in relation to fees

17   customarily paid to qualified practitioners in the community

18   for services in criminal matters of similar duration and

19   complexity are reasonable or if the fee arrangement was made

20   with a gross disregard of the defendant's trial expenses, the

21   Court may order the retained attorney to pay out of such fees

22   all or such part of costs and expenses as the Court may direct.

23              I'm reading from Guide to Judiciary Policy, Volume

24   VII, Defender Services, Section 310.10.20, retained counsel and

25   fee arrangements.

```
 1          And then after I conduct that inquiry, then I conduct
 2   an indigency inquiry of the defendant.  And the government is
 3   welcome to be here for the indigency portion of the inquiry.
 4   And if the defendant then qualifies for costs, then I can
 5   explain in camera what the next step is.  Even though you
 6   didn't put your motion as sealed, normally we do it in a sealed
 7   proceeding.
 8          MR. SCHWARTZ:  I understand, Judge.  I didn't feel the
 9   need to go forward as a sealed proceeding, but I --
10          THE COURT:  Well, you don't have to.  I'm giving you
11   that option.
12          MR. SCHWARTZ:  I would prefer the Tjoflat hearing be
13   an in camera hearing.
14          THE COURT:  Okay.  And that probably won't take too
15   long.  So I'll just ask you to step outside for a few minutes,
16   and we'll close the courtroom and seal the -- this portion of
17   the record.
18          MR. SCHWARTZ:  Do you want to clear the whole
19   courtroom?
20          THE COURT:  Unless there is somebody that you want to
21   keep in.
22          MR. SCHWARTZ:  That's okay.  I don't mind clearing the
23   courtroom.
24       (Sealed proceedings had which are not herein transcribed.)
25          THE COURT:  Very well.  We'll move into the indigency
```

1    portion of the proceeding.

2         Would you swear the defendant in, please, Tanya.

3    (The Defendant was duly sworn.)

4         THE COURTROOM DEPUTY:  Please state your full name.

5         THE DEFENDANT:  Rose Marks.

6         THE COURT:  Ms. Marks, I need to advise you first that

7    you're under oath and anything you say can be used against you.

8    If you choose to make any statements, you can at any time

9    change your mind and thereafter remain silent and you can, of

10   course, consult with your attorney should you wish to before

11   answering any questions.

12        Do you understand?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Very well.  Can you tell us if you own

15   anything at all worth $5,000 or more anywhere in the world?

16        And by "anything at all" I mean if you, yourself, or

17   in conjunction with others, either directly or indirectly,

18   through corporations, through any proxies, through anybody else

19   or directly yourself in any way, shape, or form own or have a

20   share of anything anywhere in the world valued at $5,000 or

21   more.

22        THE DEFENDANT:  No, I do not, Your Honor.

23        THE COURT:  Very well.  And do you have any bank

24   accounts?

25        THE DEFENDANT:  Yes, I do.

```
 1              THE COURT:  How many bank accounts do you have?
 2              THE DEFENDANT:  Right now there's one checking
 3    account.  I had a business account when I opened the
 4    consignment shop, but I had to close it because it wasn't
 5    bringing in any money.
 6              THE COURT:  So you have one checking account and
 7    that's your only bank account?
 8              THE DEFENDANT:  Yes.
 9              THE COURT:  And is the amount of the checking account
10    $5,000 or more?
11              THE DEFENDANT:  No.
12              THE COURT:  And do you own any stocks, bonds or other
13    investments?
14              THE DEFENDANT:  No, I don't.
15              THE COURT:  And do you own any real estate?
16              THE DEFENDANT:  I did.  I don't anymore.
17              THE COURT:  Okay.  Government, do you have any
18    questions?
19              MR. STEFIN:  I do if I'm permitted.
20              THE COURT:  Well, you can ask.
21              MR. STEFIN:  Should I stand or may I remain seated?
22              THE COURT:  Either way.
23              MR. STEFIN:  Ms. Marks, you sold your house for
24    approximately $1.25 million last year?
25              THE DEFENDANT:  Yes, I did.
```

1          MR. STEFIN:  And in that sale you cleared about
2    $430,000.
3          THE DEFENDANT:  No, it was three hundred and -- I
4    believe it was a little -- maybe a couple thousand dollars over
5    three hundred.
6          MR. STEFIN:  Well, how much of a mortgage did you have
7    on that house with Mr. Wolofsky?
8          THE DEFENDANT:  I had to pay him out of that 810,000
9    or fifteen thousand.  I'm not sure.  810 or fifteen thousand.
10   I don't remember.  But it was over 800,000.
11         MR. STEFIN:  Okay.  And so if it was sold for
12   1.25 million and you had to pay off Mr. Wolofsky for 815,000,
13   that leaves close to $400,000.  So was --
14         THE DEFENDANT:  There was taxes that were due, back
15   taxes, property taxes.  There was attorney's fees.
16         MR. STEFIN:  Attorney's fees for the closing of the
17   house?
18         THE DEFENDANT:  Yes.  Real estate fees.  I think that
19   was 50,000 for the real estate.
20         MR. STEFIN:  You paid $50,000 to a real estate agent
21   for the sale of the house?
22         THE DEFENDANT:  Yes.
23         MR. STEFIN:  You paid that?
24         THE DEFENDANT:  Yes, they took it out of the sale of
25   the house.

```
 1              MR. STEFIN:  Who did you sell the house to?

 2              THE DEFENDANT:  A family from -- I forget their name.

 3   From out of state.

 4              MR. STEFIN:  Did you know them beforehand?

 5              THE DEFENDANT:  No.

 6              MR. SCHWARTZ:  You also paid for the roof repair.

 7              THE DEFENDANT:  I paid 25 -- yes, 25,000 for the roof

 8   repair out of that.

 9              MR. STEFIN:  Okay.  And so the $300,000 in 2012, all

10   of that is gone?

11              THE DEFENDANT:  Every nickel.

12              MR. STEFIN:  You have to answer out loud.

13              THE DEFENDANT:  Pardon?

14              MR. SCHWARTZ:  She said "every nickel."

15              MR. STEFIN:  Okay.  What did you spend it on?

16              THE DEFENDANT:  I had to pay back family and relatives

17   that helped me to put bond and paid for attorney's bills.  Most

18   part of it went back to people who helped us put bond.

19              MR. STEFIN:  You also had a -- at one point you had a

20   criminal defense fund that you had formed?

21              THE DEFENDANT:  Uh-huh.  That did not go very well.

22              MR. STEFIN:  Did you have donations to that defense

23   fund?

24              THE DEFENDANT:  Very minimal.

25              MR. STEFIN:  How much did you collect in the defense
```

1   fund?

2          THE DEFENDANT:  Offhand, I cannot remember.

3          MR. STEFIN:  Well, ballpark figure.

4          THE DEFENDANT:  Maybe a couple thousand dollars.  I

5   don't remember.

6          MR. STEFIN:  A couple of thousand?

7          THE DEFENDANT:  Yeah.

8          MR. STEFIN:  Would it have been more like $20,000?

9          THE DEFENDANT:  I don't think so.  No.

10          MR. STEFIN:  Was this a defense fund set up that

11   people could contribute over the internet?

12          THE DEFENDANT:  No.

13          MR. STEFIN:  This was just a collection?  You sent out

14   solicitations to people that you knew?

15          THE DEFENDANT:  Did I do what, sir?

16          MR. STEFIN:  How did you solicit funds for your

17   defense fund?

18          THE DEFENDANT:  I would ask people, friends if they

19   want to help, and they would put 200, 300, 500.  But, you know,

20   that didn't --

21          MR. STEFIN:  What was the highest donation that you

22   received from any person?

23          THE DEFENDANT:  Maybe 500, maybe a thousand.  I can't

24   really remember, sir.

25          MR. STEFIN:  Who managed the defense fund for you, or

```
 1   did you manage it?

 2             THE DEFENDANT:  Manage it?

 3             MR. STEFIN:  Keep track of, keep the bookkeeping, keep

 4   track of who gave you money and how much.

 5             THE DEFENDANT:  It was in my grandson's name.

 6             MR. STEFIN:  The defense fund was in your grandson's

 7   name?

 8             THE DEFENDANT:  Yes.

 9             MR. STEFIN:  And your grandson's name is who?

10             THE DEFENDANT:  Dillon Marks.

11             MR. STEFIN:  So are you saying, did you open a bank

12   account under the name Dillon Marks to deposit funds for your

13   defense fund?

14             THE DEFENDANT:  Yes.

15             MR. STEFIN:  What bank were those funds held?

16             THE DEFENDANT:  Bank of America.

17             MR. STEFIN:  Is that account still open?

18             THE DEFENDANT:  No.

19             MR. STEFIN:  You also hired -- you've had a criminal

20   investigator working on your case, correct?

21             THE DEFENDANT:  Yes.  I'm sorry.

22             MR. STEFIN:  And how much have you paid him, or is

23   that part of your legal fee with Mr. Schwartz?

24             THE DEFENDANT:  No, that's separate.

25             MR. STEFIN:  And how much have you paid him?
```

```
 1            THE DEFENDANT:  There's been -- over this past couple
 2   of years, there's been several different private investigators.
 3   And I would have to estimate at least 20,000, 25,000, which
 4   came again from the proceeds from the house.
 5            MR. STEFIN:  Ma'am, do you regularly go to the Hard
 6   Rock Casino?
 7            THE DEFENDANT:  Yes, I do.
 8            MR. STEFIN:  How often would you say you go to the
 9   Hard Rock Casino?
10            THE DEFENDANT:  It depends.  Couple times a week.
11            MR. STEFIN:  And --
12            THE DEFENDANT:  Are you asking me now, sir?  I'm
13   sorry.
14            MR. STEFIN:  I'm asking you now.
15            THE DEFENDANT:  Yeah.
16            MR. STEFIN:  Would it be fair to say that in 2012
17   after your indictment you were going to the Hard Rock Casino
18   probably at least three or four times a week?
19            THE DEFENDANT:  After the indictment?
20            MR. STEFIN:  Yes, since the indictment in this case.
21        (Defendant and counsel conferring sotto voce.)
22            MR. SCHWARTZ:  Your Honor, may I ask if Mr. Stefin can
23   divide the period up before the sale of the house and after the
24   sale of the house?  That might be easier to get a clearer
25   answer.
```

```
 1              MR. STEFIN:  Okay.

 2              THE COURT:  Okay.

 3              MR. STEFIN:  When did you sell your house, ma'am?

 4              THE DEFENDANT:  It was -- I believe it was August,

 5   August of 2012.

 6              MR. STEFIN:  And since August of 2012 can -- well,

 7   strike that.

 8              Since your arrest in this case and even prior to the

 9   sale of your house, were you regularly going to the Hard Rock

10   Casino?

11              THE DEFENDANT:  I still don't understand the question.

12              MR. SCHWARTZ:  How often did you go to the Hard Rock

13   Casino before you sold your house?  After your arrest, before

14   you sold the house.

15              THE DEFENDANT:  Well, I think I -- after we got off of

16   house arrest, I don't remember what month that was --

17              What month was that?

18              MR. SCHWARTZ:  That was October, I believe.

19              THE WITNESS:  October?

20              MR. SCHWARTZ:  September, October.  I'm sorry.

21   December.

22              THE DEFENDANT:  After we got off of house arrest in

23   December, maybe January, February I started going a couple

24   times a week to the Hard Rock.

25              MR. STEFIN:  So in 2012 is it your testimony that you
```

1  would be going to the Hard Rock a couple of times a week?

2          THE DEFENDANT:  Two, three times a week.  Something

3  like that, sir.

4          MR. STEFIN:  And when you're there, do you gamble

5  money?

6          THE DEFENDANT:  Well, sometimes I get free play.  The

7  casino offers free play, like $250 free play, and I would use

8  that to gamble.  They offer certain coupons, certain things.

9  And sometimes I would use --

10          MR. STEFIN:  Did you have any gambling winnings in

11  2012?

12          THE DEFENDANT:  I might have.  I might have.  I think

13  maybe 1,200 or 2,000.  I'm -- yeah, I think I did.

14          MR. STEFIN:  What about gambling losses in 2012?

15          THE DEFENDANT:  I'm sure I did.

16          MR. STEFIN:  Did your losses exceed your winnings?

17          THE DEFENDANT:  I don't know.  I haven't calculated

18  any of it.

19          MR. STEFIN:  One moment, please, Your Honor.

20          THE COURT:  Certainly.

21          MR. STEFIN:  How were you able to get free play from

22  the Hard Rock Casino?  Is that because you're a regular

23  customer --

24          THE DEFENDANT:  Yes.

25          MR. STEFIN:  -- at the casino?

1       THE DEFENDANT:  Because I always went there for ten

2  years, ever since it opened.

3       MR. STEFIN:  And how often do you get the free play?

4       THE DEFENDANT:  Once a -- once a week.

5       MR. STEFIN:  How are you supporting yourself now

6  presently?

7       THE DEFENDANT:  Same way that we have been for --

8  since August 16, 2011.

9       MR. STEFIN:  Which is how?

10      THE DEFENDANT:  Friends and family.

11      MR. STEFIN:  That's all I have, Judge.

12      MR. SCHWARTZ:  Your Honor, just -- may I ask her one

13  other question?

14      THE COURT:  Certainly.

15      MR. SCHWARTZ:  Have you applied for food stamps?

16      THE DEFENDANT:  Yes, I did.

17      MR. SCHWARTZ:  Did you receive any food stamps?

18      THE COURTROOM DEPUTY:  For one month I did.

19      MR. SCHWARTZ:  Have they continued or have they

20  stopped now?

21      THE DEFENDANT:  They stopped.  I have to go back and

22  find out why.

23      THE COURT:  Very well.  I find the defendant to be

24  indigent for costs.

25      And I note in the motion, Mr. Schwartz, you talk about

1    the need for certain expenses.  And once somebody has been

2    declared indigent for costs, they proceed under the CJA

3    guidelines.  I don't know if you've done this before or not.

4              MR. SCHWARTZ:  Once.

5              THE COURT:  Once?

6              MR. SCHWARTZ:  Once, Your Honor.

7              THE COURT:  So you have to follow the CJA rules.  And

8    just to let you know, because I do these a fair amount in

9    connection with CJA attorneys and they're the same rules, the

10   local rule provides that any -- I mean, this is really kind of

11   silly, but it's there.  That any hourly rates over $40 an hour

12   has to be approved, and it's a statutory cap of $2,400 for

13   investigators, experts, anyone along those lines.  And I'm

14   trying to remember if --

15             Do you remember how much it is, Tanya, that you don't

16   need advance approval for?  Is it $800?

17             THE COURTROOM DEPUTY:  1,500.

18             THE COURT:  I don't remember.  You might want to take

19   a look at the guidelines to see how much you can get for costs

20   that are not approved in advance.  I approve or Judge Marra can

21   approve up to $2,400.  I believe that's per expert.  But

22   anything beyond that has to go the Eleventh Circuit for

23   approval, and it's supposed to be done in advance.

24             Yes, it is $800.  So you can expend $800 as long as

25   the fees are $40 an hour or less.

```
 1            MR. SCHWARTZ:  Your Honor, as I said, I've done this
 2   once before and it happened to be in a trial with Judge Marra,
 3   and the biggest expense -- the two biggest expenses I
 4   anticipate are probably two expert witnesses who would likely
 5   be more than $2,400, and a document management service because
 6   the government has given us a lot of documents.  I suggested
 7   before to you that there are some they haven't given us, but
 8   they have given us 14 Bankers boxes of documents, and we've
 9   assembled for cross-examination purposes probably half of that
10   amount again.
11            So the last time, I think Judge Marra got approved
12   about $40,000 for a document management service.  Not trial
13   graphics because they're too expensive.  But something similar
14   thereto to assist in indexing and storing and accessing those
15   documents, and then assisting in presenting those documents at
16   trial in various ways.  But I'll make the appropriate motions
17   first thing Monday morning --
18            THE COURT:  Okay.
19            MR. SCHWARTZ:  -- to you and/or Judge Marra,
20   whichever.
21            THE COURT:  I can only assume that he'll refer it to
22   me or ask me to do it, I would imagine, because he's going to
23   be pretty tied up in the next couple of weeks --
24            MR. SCHWARTZ:  Right.
25            THE COURT:  -- reading all of your objections to all
```

```
1    of my R & R's.
2              MR. SCHWARTZ:  I don't know that they'll be that many,
3    Judge.
4              MR. STEFIN:  Who said anybody is objecting?
5              MR. SCHWARTZ:  I don't think the objections will be
6    that long, but I think he will have to review the motions which
7    someone, unfortunately, went over the page limit on at least
8    one or two of them.
9              THE COURT:  So, in any event, if you put it all into a
10   motion, and you can do it sealed if you so wish --
11             MR. SCHWARTZ:  Right.
12             THE COURT:  -- then I won't have -- if you put enough
13   into the motion, including who the investigator is, if you're
14   going to do it with an investigator, I'm just saying, or
15   whoever it is and what their qualifications are for charging
16   that fee that they want to be charged, and if they received
17   that fee in any other court-appointed situation --
18             MR. SCHWARTZ:  Right.
19             THE COURT:  -- and, you know, as much detail as you
20   can about how many hours you anticipate needing them for and
21   what the net amount is going to be, that will make it a lot
22   easier to get it -- to get the paper pushed without hauling you
23   here into court.
24             MR. SCHWARTZ:  Very good, sir.
25             THE COURT:  That's just my advice.  Because I'm sure
```

1    you don't want to come in and I would rather not call you in,

2    but -- as much as I enjoy having you here.  So that's my

3    recommendation.

4           MR. SCHWARTZ:  And I'll certainly follow it.

5           THE COURT:  Okay.  So I think that's it for that.

6           And obviously, you know, you're going to have to give

7    me -- you gave me something of the justification for the

8    document management, and I'll keep that in mind.  But if there

9    are any other justifications for that or other experts, you

10   know, that you feel you need, obviously you can put it into the

11   written motion, and the same rules apply.

12          MR. SCHWARTZ:  Thank you, Your Honor.

13          THE COURT:  All right.  And so that's the motion to be

14   declared indigent for costs.

15          And have you seen the government's response to your

16   motion for subpoenas?

17          MR. SCHWARTZ:  Yes, I have, Judge.  And I didn't know

18   if you had it so I --

19          THE COURT:  I have it.

20          MR. SCHWARTZ:  Because I gave you a trial notebook

21   that I included it with.

22          THE COURT:  Oh, okay.  Thanks.

23          MR. SCHWARTZ:  The motion for the subpoenas is Tab 2,

24   and the government's response is Tab 3, Your Honor.

25          THE COURT:  Got it.  I've reviewed both of them.  So

1    if you want to reply, now is your opportunity.

2            MR. SCHWARTZ:  Okay.  Well, Your Honor, we set forth

3    in the motion our rationale for why we need these things.  And

4    in this case we haven't kept any secrets from the government.

5    We've been pretty straightforward about what we plan to do and

6    what our defenses are.

7            Just so Your Honor is aware, my client met

8    Ms. Deveraux in or around 1991, 1992.  Ms. Deveraux began

9    calling upon my client's assistance, advice almost immediately

10   for many, many hours a day.  At some point early in their

11   relationship Ms. Deveraux said to my client, I want you to work

12   for me as my assistant full time, I need somebody to advise me,

13   to help me, to handle all of my day-to-day problems and

14   activities.  If I'm here, to be with me.  If I'm out of the

15   country or traveling, to be in communication with me and to

16   handle my work.  Much like a wealthy Hollywood actor has

17   somebody like that or a politician might have a full-time aide

18   or chief of staff or somebody of that sort.

19           Mr. Stefin talks about one of my somewhat jocular

20   comments in my motion that -- let me go forward.

21           They negotiated a price.  My client, somewhat in gest,

22   threw out a figure a million dollars a year.  Surprisingly,

23   Ms. Deveraux said, yes, that's fine.  And for the next 17 years

24   Ms. Deveraux paid my client roughly a million dollars a year.

25   It varied back and forth based upon the royalty checks she

1   received, when she received them.  But if you look at the

2   numbers, it probably totals in compensation roughly that

3   amount.

4         Now, that amount might sound exorbitant.  And I

5   comment in my motion papers, at least if a federal judge or an

6   aging struggling I think old attorney were to do that.  But it

7   may not be exorbitant and the jury may find it not to be

8   exorbitant depending upon what the net worth and earnings are

9   of the person who is paying it.

10        Brad Pitt could certainly pay a million dollars a year

11  for an assistant to help him manage his properties, his assets,

12  deal with all of his day-to-day problems and all of his

13  children.  I couldn't.  But that's why we need to know, because

14  I'm sure the government is going to say that's a crazy number.

15  We need to know what Ms. Deveraux made during the period of

16  time that Mrs. Marks was her assistant.

17        THE COURT:  But I think that the government's point is

18  that it's going to be acknowledged and it's not going to be a

19  matter of dispute that the victim made large sums of money over

20  her recent history or her history with the defendant.  It

21  doesn't sound to me like it's going to be in dispute.

22        MR. SCHWARTZ:  Well, and one other thing.  Ms. Marks

23  also helped her with ideas and information for her books.  I

24  didn't mention that.  She helped her with in vitro

25  fertilization for her.  She did everything for her.

1          If the government will concealed now and stipulate

2    with us that the amount of a million dollars a year was

3    reasonable based on Ms. Deveraux's earnings to pay Ms. Marks as

4    her assistant --

5          THE COURT:  Well, why does that have to be the amount,

6    the fact that's stipulated?  I mean, that's not what you're

7    seeking.  Rather, what you're seeking is information about the

8    magnitude that the victim was making.  You're not seeking

9    information that what was reasonable.  You're not subpoenaing

10   Brad Pitt to find out how much he was paying to his person that

11   was handling all of his affairs.  So it doesn't seem to me to

12   be reasonable to be asking them to stipulate to that.

13         Rather, I'm saying it is undisputed that the victim

14   will have -- will acknowledge, and I think the government will

15   probably acknowledge, that the victim was making very large

16   sums of money over the period of the relationship with the

17   defendant.

18         Is that right, government?

19         MR. STEFIN:  Yes.  Absolutely.

20         MR. SCHWARTZ:  Maybe I used the wrong word, Judge.

21   Maybe the word "reasonable" was unreasonable.  Maybe the word I

22   should have used was not disproportionate to her income,

23   because I don't -- if she was making --

24         THE COURT:  But that's a characterization.  That

25   involves what the industry will bear.  It's not simply based

1    upon what the person is making, that is, the employer is

2    making.  You're asking to -- for an acknowledgment of what is

3    reasonable for the employer to pay the employee.  That's a

4    whole different thing that may be indirectly related to how

5    much the employer is making, but it's probably more dependent

6    upon what the industry will bear.

7              MR. SCHWARTZ:  And the nature of the services and

8    other factors.

9              THE COURT:  Exactly.

10             MR. SCHWARTZ:  And I understand that, Judge.  And

11   forgive me if I'm not articulating this properly.

12             Here is my concern.  If we get documents from Simon &

13   Schuster saying Ms. Deveraux made $10 million a year, then it's

14   a lot easier to have the jury see that number and make the

15   factual determination because, actually, they're going to make

16   that factual determination in determining whether the defense

17   is a viable one or not as to whether it's reasonable.  I can't

18   say it's reasonable and government can't really say it's

19   reasonable.  The group that's going to have to say that in this

20   case is the jury.

21             So in order for them to make that factual

22   determination, they need a fact to base it on.  I can ask

23   Ms. Deveraux on cross-examination, Ms. Deveraux, how much did

24   you make from the sale of this book, how much did you make from

25   the sale of that book, what was your net, well, how much came

1    to you, how much did your corporation make, et cetera, but I

2    need be able to determine whether she's being truthful with me

3    or not.

4            THE COURT:  Well, let me ask the government.  Let's

5    try to narrow this down so that we can resolve it.

6            The defendant, I think, is saying that he needs some

7    relative hard facts, and it seems to me he doesn't need many

8    hard facts, I don't think.  If you're able to get some kind of

9    ballpark figures and advise the defense of what those ballpark

10   figures are so that you can come to some kind of agreement on

11   it, I think that would be satisfactory and wouldn't have to

12   call for any further intrusion into the finances of the victim,

13   but I don't know what you're willing to or able to stipulate to

14   with the defense.  But why don't you tell me what your position

15   is on that.

16           MR. STEFIN:  Well, that's a difficult question to

17   answer because I'm trying to protect the interests of the

18   victim's privacy.  But I would say that, you know, if the

19   defense is going to allow us to bring out people's income and

20   net worth in this case, and I think they would be objecting to

21   it in most instances because some of these people were

22   financially devastated as a result of their interaction with

23   this defendant and the codefendants, this is one victim who

24   happens to not be in that situation.

25           THE COURT:  Well, they have to be worried about

1   opening the door on that issue.

2          MR. STEFIN:  Well, I know.  So let's assume that they

3   want to open the door on that.  I do believe that there will be

4   no dispute that Ms. -- that JM -- I guess I can use her name in

5   open court here -- made substantial sums of money writing books

6   over a period of time and --

7          THE COURT:  Well, do you have any idea what that

8   means, ballpark?

9          MR. STEFIN:  I don't have the numbers before me, but

10  if the Court gives me the opportunity to see what I can

11  stipulate to.

12          I do think it's inappropriate to be subpoenaing her

13  financial records because the bottom line is what they're

14  really seeking to do is have information at their disposal for

15  purposes of impeachment possibly.

16          MR. SCHWARTZ:  Yes.

17          MR. STEFIN:  And that's putting the cart before the

18  horse.  And the cases that I've found, which I didn't have a

19  chance to cite in my brief, I found afterwards, that's not a

20  proper purpose for Rule 17(c), trial subpoenas, digging for

21  potential impeachment material.

22          But having said that, I can go back with the victim

23  because before this hearing --

24          THE COURT:  Do you want to file a notice of

25  supplemental authority with those?

1          MR. STEFIN:  I would be happy to.  I would like to do

2     that.

3          THE COURT:  Okay.

4          MR. STEFIN:  And I would also ask for the opportunity

5     to talk to the victim about whether she has any problem

6     disclosing what her gross income was each of the years that she

7     had interactions with this defendant.

8          THE COURT:  Okay.  So how long do you want to attempt

9     to resolve that by stipulation?

10          MR. STEFIN:  I just need a couple of days, I think,

11     just to be safe.  Today is -- what is today?  Friday?

12          THE COURT:  Friday.

13          MR. STEFIN:  By Wednesday of next week, let's say, I

14     will have something filed.

15          THE COURT:  Well, I would ask you to confer with the

16     defense to see if you can come up with some kind of agreement.

17          MR. STEFIN:  I'll try to come up with an agreement

18     with the defense counsel.

19          THE COURT:  Do you want to give them until next

20     Wednesday?

21          MR. SCHWARTZ:  That's fine, Judge.  We have three

22     weeks.

23          THE COURT:  Okay.  Very well.

24          MR. STEFIN:  And so --

25          THE COURT:  I'll defer ruling on this or having a

```
 1    further ruling until I hear from you all by next Wednesday as
 2    to whether or not you have come to some kind of agreement on
 3    this --
 4              MR. STEFIN:  That would be great.
 5              THE COURT:  -- or if you need further Court
 6    intervention.
 7              MR. STEFIN:  Okay.
 8              MR. SCHWARTZ:  There's one other problem.
 9              THE COURT:  And if you want to file your notice of
10    supplemental authority --
11              MR. STEFIN:  I will file a supplemental brief or
12    supplemental authority, yes.
13              THE COURT:  Okay.
14              MR. STEFIN:  I'll do that.
15              MR. SCHWARTZ:  And there is one other part to the
16    motion, Judge.  We also asked for tax records.
17              THE COURT:  Right.  Is that the part that you have the
18    supplemental authority on or are you going to rely upon the
19    authority you have in your response?
20              MR. STEFIN:  The supplemental authority has to do with
21    the fact that it is not appropriate to seek trial subpoenas for
22    impeachment material.  And to me their request for the tax
23    returns, in addition to being a complete invasion of privacy,
24    is really they're just seeking impeachment material.
25              THE COURT:  Okay.
```

1          MR. SCHWARTZ:  Well, Your Honor --

2          THE COURT:  You want to make a reply on the tax issue?

3          MR. SCHWARTZ:  Sure.  But first of all I would -- I

4    guess I've disagreed all along in the case with the

5    government's definition of the government.  Mr. Stefin on

6    Page 3, Footnote 2, of his response says, the government is not

7    in the possession of the victim's tax records.

8          THE COURT:  You know, I think most of the cases that

9    talk about discovery obligations of the government do make a

10   distinction between the prosecution team and the investigation

11   team and the rest of the government.

12          And as you probably well know, the government in order

13   to get that kind of tax information from the IRS need to get a

14   court order in order to get it.  So the government, I think, is

15   just saying that they haven't gotten a court order, they

16   haven't voluntarily gotten it from anybody or any -- from this

17   victim, and I think that's the gist of their statement.

18          MR. SCHWARTZ:  But there is an IRS agent as part of

19   the government's team, and my experience is --

20          THE COURT:  Well, I would assume that --

21          MR. SCHWARTZ:  Go ahead.

22          THE COURT:  -- that agent has not divulged any of that

23   information to the government.  I mean the government

24   prosecution team.

25          MR. STEFIN:  And I would say -- and, again, there's

1    lots of rules I'm not familiar with, but the agent would not

2    have access to this information unless she made specific

3    requests for specific legal reasons.  And to my knowledge that

4    has not been done in this case.

5        MR. SCHWARTZ:  Forgetting whether they physically have

6    it or not, an agency of the United States Government is who we

7    wish to subpoena, along with the defendant, for these records.

8        And the reason for the subpoena is this, Your Honor.

9    Again, we believe that Ms. Deveraux treated Mrs. Marks as her

10   assistant.  She helped her in business matters.  She helped her

11   in personal matters.  She basically for a number of years ran

12   her life.  The government suggests she did it in some

13   malevolent way.  We suggest she did it in a way to benefit

14   Ms. Deveraux.  But she ran her life and she was paid for it.

15       We need to see how Ms. Deveraux characterized the

16   payments to Ms. Marks on her tax returns in her various

17   schedules.  Did she classify her as a business assistant and

18   take any payments out either pursuant to 1099 or maybe W-2 --

19   but I believe 1099 -- on her tax return?  Did she treat her as

20   a personal assistant?  Was this treated as a deductible

21   expense?  Was it not treated as a deductible expense?  Was it

22   treated as a gift?  Was a gift tax paid?  We don't know the

23   answer to that until we look at it.

24       The government has now notified us that they're going

25   to -- because of this inquiry -- because of a newspaper article

 1   do a tax investigation of Ms. Marks in relation to

 2   Ms. Deveraux.  They have a right to do that.  I can't prevent

 3   it certainly.  But for the purposes of our trial we need to

 4   know how Ms. Deveraux treated the payments to Ms. Marks.

 5        You know, if she comes now, as it appears in the

 6   indictment, and says I made a payment to her for spiritual

 7   advice, we were going to -- she was going to take the curse off

 8   this money and then return the money to me every year for 17

 9   years, that might be different than what's in the tax returns.

10   And I believe we have a right to see what's in the tax returns

11   so that in the presentation of our case we can recall her or

12   perhaps call Ms. Marks or Ms. Marks' accountant to testify

13   about how these expenses were treated.

14        THE COURT:  Government?

15        MR. STEFIN:  Well, that's his position.  But again,

16   he's just -- it's just a discovery tool in order to see if he

17   can come up with impeachment material.

18        THE COURT:  Well, what about his proffered reason,

19   though?  I mean, why does he -- why is he not entitled to that?

20   I mean, forget about whether or not he has ulterior motives.

21   There's nothing wrong with ulterior motives as long as your

22   legitimate motives are sufficient.

23        MR. STEFIN:  So why can't he then ask the witness if

24   it's permissible whether -- how she treated the payments to the

25   defendant on her tax returns?  Because her answer will be under

1   oath.  And if she's lying about it, she's subject to

2   prosecution for perjury.

3           What defense counsel wants to have is the material to

4   impeach her with in the event she says something that he

5   doesn't agree with.

6           THE COURT:  Mr. Marks -- Mr. Marks?  Mr. Schwartz?

7           MR. SCHWARTZ:  That's part of it, Judge, and maybe

8   that's an ulterior motive.  But a legitimate motive is to have

9   a witness be able to testify on my case, a tax expert perhaps,

10  as to this is what the return says, this is how it was treated.

11  Ms. Marks was -- either gifted the money or -- and it was

12  reported as gift or -- and there was a gift tax return filed or

13  she was an employee, given a 1099, or she was kept on as a

14  personal assistant, not as a business employee.  We have a

15  right to do that on our case.  And that's why we ask that the

16  IRS be required to produce those records to us.

17          And, you know, I don't quite understand Mr. Stefin's

18  concept.  I thought that the Fifth Amendment to the United

19  States Constitution says something about being entitled to

20  confront witnesses against you in a criminal case.  The way I

21  was taught you confront witness against you in a criminal case

22  is by impeaching their testimony.

23          I've been asked by a number of judges, Mr. Schwartz,

24  before you ask that question do you have a good faith basis to

25  ask that question?  And if I get up and I say, no, because

1    Mr. Stefin wouldn't agree to turn over the tax returns and

2    asked that I be bound by his witness' answer.  I don't quite

3    understand that theory, Judge.  But I would suggest that in

4    addition to what I set forth earlier, my right of confrontation

5    under the Fifth Amendment allows me to get documents to assist

6    me in confronting witnesses.

7                THE COURT:  Well, I'm going to deny the motion without

8    prejudice to renew, and I'm going to deny it because you really

9    haven't submitted any cases in support of your request, no

10   memorandum of law.  The government has produced some cases in

11   response that, for the time being anyway, persuade me of their

12   position.

13               MR. SCHWARTZ:  May I ask Your Honor, rather than

14   denying it --

15               THE COURT:  Well, I said deny it without prejudice.

16   If you want to do some research and find out if in similar

17   situations the courts have for their balancing reasons -- and

18   obviously, there are competing interests here.  There's

19   obviously the defendant's interests to be able to prove her

20   case, but then there's the victim's privacy interest also,

21   which the government cases discuss, particularly in relation to

22   tax returns.  And while, of course, in an ideal world you would

23   be able to confront the witness with documentary proof of

24   whatever the witness is testifying about, that doesn't give

25   you, I don't think, carte blanche to delve into privacy

1  matters, and particularly tax returns.

2          MR. SCHWARTZ:  And that --

3          THE COURT:  But I'm open to -- if you can find some

4  other courts that feel different, I'm happy to examine --

5  re-examine that equation.

6          MR. SCHWARTZ:  Your Honor, the reason I said rather

7  than denying it, in this case the Court was somewhat too

8  efficient.  The motion was filed.  Mr. Stefin --

9          THE COURT:  I'll wait for your reply.

10          MR. SCHWARTZ:  That's what I was going to suggest.

11          THE COURT:  I'm happy to do that.

12          MR. SCHWARTZ:  Thank you.

13          THE COURT:  I won't deny it at this stage.

14          MR. SCHWARTZ:  All right.

15          THE COURT:  I won't grant it at this stage.  I'll just

16  await your reply, see what it says.  If I feel like I need to

17  reconvene or whatever, I'll do that.  Or I'll just decide based

18  upon the reply and obviously everything else that's transpired.

19          MR. SCHWARTZ:  And I apologize for calling you too

20  efficient, Your Honor.

21          THE COURT:  Don't let it happen again.

22          MR. STEFIN:  How often do you get accused of that,

23  Judge?

24          THE COURT:  Lately not often.

25          MR. STEFIN:  And I'll submit the supplemental

1    authority as you suggested earlier as well --

2              THE COURT:  Okay.

3              MR. STEFIN:  -- at the same time.

4              THE COURT:  Great.

5              MR. STEFIN:  Judge, there was one other issue, and

6    maybe this wasn't put on the calendar today because I just

7    filed a motion yesterday.

8              THE COURT:  Yes, I saw the motion.

9              MR. STEFIN:  Okay.  And --

10             THE COURT:  I was going to get to that because we do

11   have this defendant here anyway, although I suppose that it

12   might apply to other defendants.

13             MR. STEFIN:  Well, Mr. --

14             THE COURT:  Well, actually, it does apply to other

15   defendants.  It's Cynthia Miller, right?

16             MR. STEFIN:  Right.

17             THE COURT:  I know Mr. Schwartz has a position on this

18   also pursuant to your certificate of conference.

19             So obviously there's an impending trial in this

20   matter.  Let me ask Mr. Schwartz, when are you going to be able

21   to respond to that motion?

22             MR. SCHWARTZ:  Well, I want to do the appropriate

23   research and I want to check -- we got a somewhat -- a small

24   note in the motion that was actually filed from a doctor.

25   We're now researching the doctor, the hospital, et cetera.  But

1   I feel uncomfortable, Judge, because my client is a

2   peripherally involved in this, but the main defendant against

3   who this witness is going to be offered is Mr. Lubin, he is in

4   another court, didn't anticipate this coming up today, and

5   obviously isn't here to argue, and I suggest that he needs to

6   be here.  I again have confrontation problems.

7         THE COURT:  I'm just looking for how quickly we can

8   ripen this.

9         MR. SCHWARTZ:  I can -- my problem is this, Judge.  I

10  have a four-day hearing coming up the week after next.  It's a

11  hearing I tried to get a DEA administrative law judge to

12  continue, and she refused to continue it.

13        THE COURT:  That's ugly.

14        MR. SCHWARTZ:  Yes.  Well, the whole star chamber --

15  never mind.  I withdraw that.  But that's going to be --

16        THE COURT:  Good thing I got those R & R's out this

17  week.

18        MR. SCHWARTZ:  Yes.  It's the 19th, 20th, 21st and

19  maybe the 22nd.  I'm trying to prepare for trial.  We're trying

20  to deal with all of the documents we have.  We have to respond

21  to your R & Rs by the 12th, I believe.  And then I'm sure the

22  government is going to give us responses to our objections, and

23  we're going to have to have hearings.

24        THE COURT:  Well, they have to -- they have the same

25  deadlines you do.

```
 1              MR. SCHWARTZ:  I understand.

 2              MR. STEFIN:  I don't think we're going to -- I don't

 3    think we're going to be responding to his objections because

 4    I'm assuming his objections will incorporate the arguments that

 5    have already been made.

 6              THE COURT:  Right.

 7              MR. SCHWARTZ:  And then if there's going to be a

 8    hearing, I guess it would be around the last week of the month.

 9    So I'm not -- I wasn't planning on an extensive response to the

10    government's motion.  I was going to do a writing, but nothing

11    extensive.

12              Mr. Lubin, on the other hand, I know was -- had

13    already started doing research and preparing to write on this,

14    and I think he has until the 25th to provide a response.

15              THE COURT:  Yes, but I want to do it expedited

16    obviously.

17              MR. SCHWARTZ:  That's what Your Honor --

18              THE COURT:  As I indicated, you know, I know all of

19    the affected parties are not here, but I was hoping that we

20    could figure it out so that I don't have to issue an order in

21    ignorance of the considerations involved.  I mean, you know, I

22    can issue an order giving a deadline, a shortened deadline, you

23    know, for the response, but I would really like to know what

24    the considerations are from both sides.

25              MR. SCHWARTZ:  Well, I gave you my scheduling
```

```
 1  considerations.  My other --
 2          THE COURT:  It sounds like Mr. Lubin is the more
 3  pertinent one, though.
 4          MR. SCHWARTZ:  Right.  And we can ask his --
 5          MR. STEFIN:  Can I have one second?
 6          MR. SCHWARTZ:  -- paralegal perhaps off the record.
 7  Mr. Stefin can speak with her.  She is here today.
 8          The other concerns, Judge -- and Mr. -- I don't want
 9  to talk behind Mr. Stefin's back.
10          MR. STEFIN:  I'm sorry?
11          MR. SCHWARTZ:  No, I don't.  You did the right thing.
12  I just didn't want to say something and have you not hear it is
13  what I meant.
14          Mr. Lubin said in an e-mail to Mr. Stefin the other
15  day that your delay shouldn't be my emergency or words to that
16  effect.  We knew or we heard that this motion was going to come
17  for the last I think two months or thereabouts.  It is filed
18  not on the eve of trial, but pretty darn close.  And now
19  compacted into three weeks before trial we now have to write on
20  and then maybe hold a deposition of a Japanese witness.
21          And there are logistical problems too.  I know
22  Mr. Lubin has extensive paperwork upon which he wants to
23  cross-examine.  I have some for my cross-examination.  Somehow
24  we have to arrange for someone to be in Japan to show these
25  documents to this witness in Japan.  I don't think Mr. Lubin
```

1   wants to take the time to go to Japan, nor does he have the

2   resources to go to Japan, between now and trial.  Nor do I.

3           THE COURT:  Well, may I suggest something?  May I

4   suggest that if you think that it's likely that the motion is

5   going to be granted, and I don't know what reasons you have,

6   you know, I wouldn't care to venture an opinion in advance of

7   hearing your responses -- you know, on the face of it, the

8   motion seems to be relatively legitimate to me.

9           Now, as I say, I qualify that by I haven't seen your

10  responses.  But my suggestion is that if you think that it's

11  highly likely that motion will be granted, I would think that

12  for your efficiency sake that it would -- and for the

13  government that it would make sense for you to get together

14  with the government and say, okay, you know, you want to do

15  this, can we agree upon the procedures to be followed so that

16  we waste as little time as possible accomplishing it.  I mean,

17  I don't have to tell you this.  You know, you're a far more

18  experienced litigator than I am, but, you know, that is how it

19  seems to me.

20          MR. SCHWARTZ:  And we would be -- I would be glad to

21  on Mr. Lubin's behalf agree that the two of us will meet with

22  Mr. Stefin and discuss procedures.  I just think it may be late

23  in the day to be able to work out the appropriate procedures.

24          THE COURT:  Well, I mean that -- you know, obviously

25  there's two ways of doing things, you know, and I don't view

```
 1   you as being in the latter camp that I was about to describe.

 2   I view you as being in the former camp.

 3           MR. SCHWARTZ:  I'm not going to try to obstruct

 4   anything.

 5           THE COURT:  Exactly.  I don't view you as an

 6   obstructionist attorney.  Rather, I view you as somebody who

 7   attempts to do things in an efficient manner and pick your

 8   battles.  And I think you're an extremely talented attorney

 9   and, you know, that's what talented attorneys do.  I mean, they

10   don't waste time fighting over stupid things.  So, you know, if

11   this falls into a battle that doesn't merit being fought, then

12   go ahead and meet with the government and try to make it more

13   efficient.

14           MR. SCHWARTZ:  And I --

15           THE COURT:  But if you have some serious -- you know,

16   by the same token, if you have some serious reasons to not

17   agree and work with the government to get it done, besides the

18   time factor, and I understand the time factor, but if you do

19   have some serious other concerns, then obviously, you know,

20   feel free to do it.  I don't mean to coerce you past whatever

21   legitimate concerns you might have.

22           MR. SCHWARTZ:  I'm at a disadvantage, Judge, because

23   it's really not my concerns.  I have some basic concerns, but

24   Mr. Lubin is the one --

25           THE COURT:  Right.
```

1    MR. SCHWARTZ:  -- who is the carrier of this torch.

2    THE COURT:  Okay.  Well, his paralegal is here and

3  you're here and maybe you can communicate that all to him.

4  And, you know, I'm -- I'm loath to -- I don't know what I'm

5  going to do, but I'm going to do something to expedite this.

6    MR. STEFIN:  I was going to ask the Court, could the

7  Court at least enter an order, it could be verbal or written,

8  just to simply expedite the response date of this, and in the

9  interim we'll try to work it out.  But if we haven't worked it

10  out by say mid next week --

11    THE COURT:  I can certainly do that.  I mean, do you

12  want to speak with Mr. Lubin's paralegal and see if you can get

13  any ideas about what kind of expedited date makes sense?

14    MR. STEFIN:  I won't talk behind his back either.

15    May I represent before that in speaking to Mr. Lubin

16  and in his e-mail that he responded, his only objection was

17  whether there was sufficient medical proof of her condition.

18  He said otherwise he did not object to a video deposition.  So

19  at that time I did not have the note that I attached as the

20  exhibit to show him, and I don't know if he still has an

21  objection.

22    But one of my points of contention would be that if

23  they -- if the defense disputes her medical condition, that

24  could be one of the areas they can question her on in the

25  deposition because merely allowing the deposition does not

1   automatically make it admissible at the trial.  We still have

2   to establish her unavailability at the trial.

3   MR. SCHWARTZ:  What I've been told by the paralegal

4   for Mr. Lubin is that Mr. Lubin's concern is getting some

5   medical records that he can have a doctor look at to see if

6   this individual should or should not be incapacitated or unable

7   to travel.

8   THE COURT:  Well, it seems to me -- I'm sorry to

9   interrupt you.  Go ahead.

10   MR. SCHWARTZ:  I'm told that he's asked Mr. Stefin for

11   medical records on a couple of occasions over the past month or

12   so, and he apparently does not believe -- and again, this is

13   secondhand.  He does not believe that the one-page letter is

14   sufficient.  He would like to see some medical records that he

15   can have a doctor look at to determine whether she should or

16   should not be able to travel.

17   And the other concern that Mr. Lubin has is, until the

18   13th he's tied up in a matter involving the SEC, and that would

19   mean that he would need at least until the end of next week in

20   order to properly respond to this.

21   Again, I'm parroting now, Judge.  These are not my

22   views.

23   THE COURT:  I understand.  And, you know, I'm just

24   trying to figure out when is an appropriate date to order the

25   expedited response by.

```
 1            So, government, if I order an expedited response by
 2   close of business of Thursday, that gives them a week from
 3   yesterday when it was filed for the response.  Is that a time
 4   frame you can live with?
 5            MR. STEFIN:  Yes, I will live with that.  And I'll
 6   also try to talk to both counsel and try to resolve this in the
 7   interim.  And if we can't resolve it by Thursday, perhaps we
 8   can have a hearing set on it.  If the Court thinks he needs a
 9   hearing at that point on Friday, a week from today.
10            THE COURT:  Right.
11            MR. SCHWARTZ:  And, Your Honor, based on my --
12            THE COURT:  And maybe I will set it for a hearing on
13   Friday, order the response by Thursday, and cancel the hearing
14   if I find that it's not necessary --
15            MR. STEFIN:  That's fine.
16            THE COURT:  -- based upon what the response is.
17            MR. STEFIN:  That's fine.  And logistically --
18            THE COURT:  Or obviously if you reach an agreement.
19            MR. STEFIN:  Right.
20            MR. SCHWARTZ:  And if there has to be a hearing,
21   Judge, and again that's really between Mr. Stefin and Mr. Lubin
22   and the Court, I would suggest that the week of the 25th would
23   have to be the week in which we have that hearing.
24            THE COURT:  Why is that?
25            MR. SCHWARTZ:  Not the hearing.  The deposition.
```

1   Forgive me.  If there has to be a deposition.

2              THE COURT:  Well, you all can work that out.  I'll let

3   you all work that out.

4              MR. STEFIN:  Right.  Because -- just so Mr. --

5              THE COURT:  I'm only going to intervene if you can't

6   come to an agreement.

7              MR. STEFIN:  This deposition --

8              THE COURT:  I'm free next Friday.  All I have is duty

9   court at 10 o'clock.  So after that I'm free next Friday.  So

10  I'll probably set it down for a hearing for Friday, early

11  Friday afternoon, and --

12             MR. STEFIN:  We'll try to work it out.

13             THE COURT:  Or maybe I will set it for lunchtime

14  because that's probably the time that Mr. Lubin is most likely

15  to be free and affords you the ability to get up here without

16  fighting traffic.

17             MR. SCHWARTZ:  And, Judge, maybe if I have my

18  memorandum done in time by -- in the next -- by the beginning

19  of next week, we can piggyback on that hearing if Your Honor

20  needs some more questions about the subpoenas that I'm

21  requesting.

22             THE COURT:  Sure.  I'm happy to do that.  So I'll set

23  aside some time for next Friday at noon.

24             MR. STEFIN:  Okay.

25             THE COURT:  Anything else pending?  Nope?

```
 1            MR. SCHWARTZ:  I was trying to think of anything else,
 2   but I'll save them for trial, Judge.
 3            THE COURT:  I think you have enough grist for the
 4   mill.
 5            MR. SCHWARTZ:  Yes, Your Honor.
 6            THE COURT:  Okay.  We'll see you maybe next Friday at
 7   noon.
 8            MR. SCHWARTZ:  Thank you.
 9            MR. STEFIN:  Will it be verbal or will your order
10   indicate the response is due Thursday?
11            THE COURT:  I'm going to put something on CM/ECF.
12            MR. STEFIN:  Thank you, Judge.
13            THE COURT:  Sure.  Thank you all.
14            MR. SCHWARTZ:  Thank you.
15            MR. STEFIN:  Thank you.
16            THE COURT:  One more thing.  I'm sorry.  I noticed
17   also about grand jury transcripts, the sections that I cited in
18   my Report & Recommendation on defendant Rose Marks' motion to
19   dismiss Docket Entry 801, I cited to three days of grand jury
20   transcripts, just small portions of each of those three days.
21   And I'm looking for it in my -- yes, here it is on Page 7.  The
22   April 7, 2011, transcript, Pages 45 to 47; April 14, 2011,
23   transcript, Page 36; and May 19, 2011, transcript, Page 67.
24   And those are the transcripts excerpts that lead me to the
25   statement, the government did allow testimony in front of the
```

1   original grand jury that used ethnic stereotyping to paint the

2   defendants as members of gypsy organized crime that have no

3   psychic abilities but rather are only interested in stealing

4   from, quote, Americans, unquote.

5           Now, some of those transcript excerpts are included in

6   the defendant's motions, but not all of those excerpts are

7   included in the defendant's pleadings.  Therefore, Judge Marra

8   as well as the press and public which are entitled to --

9   there's a presumption that they're entitled to view what I have

10  viewed in arriving at my conclusions.  So I think there's a

11  First Amendment presumption.  And certainly for Judge Marra as

12  well as any appellate review there would be a need to put those

13  into the record.

14          But before I did that, rather than just sua sponte

15  doing it, considering it's grand jury information, even though

16  it's already been turned over to the defense, I wanted to get

17  the government's position on putting those three transcripts

18  excerpts into the record, the public record.

19          MR. STEFIN:  Well, I mean my -- I didn't give it much

20  thought.  I forgot you had entered that request.  But I mean,

21  my initial thought is simply I don't feel that it's necessary.

22  I mean, unless you're telling me that Judge Marra would not

23  have access to those experts otherwise, which I would think he

24  would --

25          THE COURT:  Well, you know, there's a presumption,

1   like I said.  Number one, you wouldn't normally have it and we

2   don't like to operate the court system by giving judges

3   information in camera, you know, unless there's a legitimate

4   reason to do that.  I mean, like I say, the presumption is that

5   the public and the press should have the opportunity to look

6   over the shoulder of the court system to make sure that the

7   court system is doing its job properly, particularly where it's

8   something that has been referenced in an opinion.  And, of

9   course, subsequently for appellate purposes it has to be in the

10  record for one reason or another, either unsealed or sealed.

11          And so I'm trying to get the government's position and

12  basis for the government's position.  If the government is

13  opposing putting them into the public record, I would like to

14  hear what the basis is for the government's position.

15          MR. SCHWARTZ:  May we approach for a moment, Your

16  Honor?

17          THE COURT:  You may.

18          MR. SCHWARTZ:  Thank you.

19          THE COURT:  What's the easiest way?  Sidebar?

20      (Sealed Proceedings were held at the bench.)

21      (The following proceedings were held in open court:)

22          THE COURT:  All set?

23          Okay.  So considering the fact that it's already in

24  the record, and that's at Docket Entry 727- -- I think it was

25  5?

```
 1          MR. SCHWARTZ:  Exhibit 5.  Yes, Your Honor.

 2          THE COURT:  Right.  All of the grand jury transcripts

 3   are there.  It's a composite exhibit already.  The motion -- my

 4   notice is moot.

 5          MR. SCHWARTZ:  Thank you, Your Honor.

 6          THE COURT:  Thank you all.

 7          MR. SCHWARTZ:  Thank you.

 8          MR. STEFIN:  Thank you.

 9      (Proceedings concluded at 3:54 p.m.)

10

11                 C E R T I F I C A T E

12      I, Karl Shires, Registered Professional Reporter and

13   Federal Certified Realtime Reporter, certify that the foregoing

14   is a correct transcript from the record of proceedings in the

15   above-entitled matter.

16      Dated this 13th day of March, 2013.

17

18   _____
     Karl Shires, RPR FCRR
19

20

21

22

23

24

25
```

**$**

$1.25 [1]   5/24
$1.25 million [1]   5/24
$10 [1]   21/13
$10 million [1]   21/13
$2,400 [3]   14/12 14/21
 15/5
$20,000 [1]   8/8
$250 [1]   12/7
$300,000 [1]   7/9
$40 [2]   14/11 14/25
$40,000 [1]   15/12
$400,000 [1]   6/13
$430,000 [1]   6/2
$5,000 [3]   4/15 4/20
 5/10
$50,000 [1]   6/20
$800 [3]   14/16 14/24
 14/24

**-**

-v [1]   1/6

**1**

1,200 [1]   12/13
1,500 [1]   14/17
1.25 million [1]   6/12
10 o'clock [1]   41/9
1099 [3]   27/18 27/19
 29/13
11-80072-CR-MARRA/HOPKINS [1]
 1/2
12th [1]   33/21
13th [2]   39/18 45/16
14 [2]   15/8 42/22
16 [1]   13/8
17 [3]   18/23 23/20
 28/8
19 [1]   42/23
1991 [1]   18/8
1992 [1]   18/8
19th [1]   33/18

**2**

2,000 [1]   12/13
20,000 [1]   10/3
200 [1]   8/19
2011 [4]   13/8 42/22
 42/22 42/23
2012 [7]   7/9 10/16
 11/5 11/6 11/25 12/11
 12/14
2013 [2]   1/8 45/16
20th [1]   33/18
21st [1]   33/18
22nd [1]   33/19
25 [1]   7/7
25,000 [2]   7/7 10/3
258 [1]   1/24
25th [2]   34/14 40/22
2:30 [1]   1/9

**3**

300 [1]   8/19
310.10.20 [1]   2/24
33301 [1]   1/16
33401 [1]   1/24
33432 [1]   1/19
36 [1]   42/23
3728 [1]   1/23
3:54 [1]   45/9

**4**

45 [1]   42/22
47 [1]   42/22

**5**

50,000 [1]   6/19
500 [3]   1/16 8/19 8/23
514-3728 [1]   1/23
561 [1]   1/23

**6**

67 [1]   42/23

**7**

700 [1]   1/19
701 [1]   1/24
727 [1]   44/24

**8**

800,000 [1]   6/10
801 [1]   42/19
810 [1]   6/9
810,000 [1]   6/8
815,000 [1]   6/12

**A**

abilities [1]   43/3
ability [1]   41/15
able [10]   12/21 22/2
 22/8 22/13 29/9 30/19
 30/23 32/20 36/23
 39/16
above-entitled [1]
 45/15
Absolutely [1]   20/19
access [2]   27/2 43/23
accessing [1]   15/14
accomplishing [1]
 36/16
account [7]   5/3 5/3
 5/6 5/7 5/9 9/12 9/17
accountant [1]   28/12
accounts [2]   4/24 5/1
accused [1]   31/22
acknowledge [2]   20/14
 20/15
acknowledged [1]   19/18
acknowledgment [1]
 21/2
activities [1]   18/14
actor [1]   18/16
addition [3]   2/14
 25/23 30/4
administrative [1]
 33/11
admissible [1]   39/1
advance [4]   14/16
 14/20 14/23 36/6
advice [3]   16/25 18/9
 28/7
advise [3]   4/6 18/12
 22/9
affairs [1]   20/11
affords [1]   41/15
afternoon [4]   2/5 2/7
 2/8 41/11
agency [1]   27/6
agent [4]   6/20 26/18
 26/22 27/1
aging [1]   19/6
agree [5]   29/5 30/1
 36/15 36/21 37/17

agreement [6]   22/10
 24/16 24/17 25/2 40/18
 41/6
ahead [3]   26/21 37/12
 39/9
aide [1]   18/17
al [1]   1/7
allow [2]   22/19 42/25
allowing [1]   38/25
allows [1]   30/5
Amendment [3]   29/18
 30/5 43/11
AMERICA [2]   1/4 9/16
Americans [1]   43/4
amount [8]   5/9 14/8
 15/10 16/21 19/3 19/4
 20/2 20/5
and/or [1]   15/19
announce [1]   2/4
answer [6]   7/12 10/25
 22/17 27/23 28/25 30/2
answering [1]   4/11
anticipate [2]   15/4
 16/20 33/4
anybody [3]   4/18 16/4
 26/16
anymore [1]   5/16
anyway [2]   30/11 32/11
apologize [1]   31/19
apparently [1]   39/12
appearances [2]   1/13
 2/4
appears [1]   28/5
appellate [2]   43/12
 44/9
applied [1]   13/15
apply [3]   17/11 32/12
 32/14
appointed [1]   16/17
approach [1]   44/15
appropriate [5]   15/16
 25/21 32/22 36/23
 39/24
approval [2]   14/16
 14/23
approve [2]   14/20
 14/21
approved [3]   14/12
 14/20 15/11
approximately [1]   5/24
April [2]   42/22 42/22
April 14 [1]   42/22
April 7 [1]   42/22
areas [1]   38/24
argue [1]   33/5
arguments [1]   34/4
arrange [1]   35/24
arrangement [1]   2/19
arrangements [1]   2/25
arrest [4]   11/8 11/13
 11/16 11/22
arriving [1]   43/10
article [1]   27/25
articulating [1]   21/11
aside [1]   41/15
asked [4]   25/16 29/23
 30/2 39/10
asking [4]   10/12 10/14
 20/12 21/2
assembled [1]   15/9
assets [1]   19/11
assist [2]   15/14 30/5

assistance [1]   18/9
assistant [9]   1/15
 18/12 19/11 19/16 20/4
 27/10 27/17 27/20
 29/14
assisting [1]   15/15
assume [3]   15/21 23/2
 26/20
assuming [2]   2/14 34/4
attached [1]   38/19
attempt [1]   24/8
attempts [1]   37/7
attorney [5]   2/21 4/10
 19/6 37/6 37/8
attorney's [3]   6/15
 6/16 7/17
attorneys [3]   1/15
 14/9 37/9
August [4]   11/4 11/5
 11/6 13/8
August 16 [1]   13/8
authority [7]   23/25
 25/10 25/12 25/18
 25/19 25/20 32/1
automatically [1]   39/1
await [1]   31/16
aware [1]   18/7

**B**

back [8]   6/14 7/16
 7/18 13/21 18/25 23/22
 35/9 38/14
balancing [1]   30/17
ballpark [4]   8/3 22/9
 22/9 23/8
bank [6]   4/23 5/1 5/7
 9/11 9/15 9/16
Bankers [1]   15/8
BARDFELD [2]   1/15 2/6
base [1]   21/22
based [6]   18/25 20/3
 20/25 31/17 40/11
 40/16
basic [1]   37/23
basically [2]   2/14
 27/11
basis [3]   29/24 44/12
 44/14
battle [1]   37/11
battles [1]   37/8
Beach [2]   1/8 1/24
bear [2]   20/25 21/6
began [1]   18/8
beginning [1]   41/18
behalf [2]   2/6 36/21
believe [11]   6/4 11/4
 11/18 14/21 23/3 27/9
 27/19 28/10 33/21
 39/12 39/13
bench [1]   44/20
benefit [1]   27/13
beyond [1]   14/22
biggest [2]   15/3 15/3
bills [1]   7/17
blanche [1]   30/25
Boca [1]   1/19
bond [2]   7/17 7/18
bonds [1]   5/12
book [2]   21/24 21/25
bookkeeping [1]   9/3
books [2]   19/23 23/15
bottom [1]   23/13

**B**

Boulevard [1]   1/16
bound [1]   30/2
boxes [1]   15/8
Brad [2]   19/10 20/10
brief [2]   23/19 25/11
bring [1]   22/19
bringing [1]   5/5
Broward [1]   1/16
business [5]   5/3 27/10
27/17 29/14 40/2

**C**

calculated [1]   12/17
calendar [1]   32/6
call [4]   2/1 17/1
22/12 28/12
calling [3]   2/3 18/9
31/19
camera [4]   2/13 3/5
3/13 44/3
camp [2]   37/1 37/2
cancel [1]   40/13
cap [1]   14/12
care [1]   36/6
carrier [1]   38/1
cart [1]   23/17
carte [1]   30/25
case [17]   1/2 2/16
9/20 10/20 11/8 18/4
21/20 22/20 26/4 27/4
28/11 29/9 29/15 29/20
29/21 30/20 31/7
cases [5]   23/18 26/8
30/9 30/10 30/21
casino [8]   10/6 10/9
10/17 11/10 11/13 12/7
12/22 12/25
certain [3]   12/8 12/8
14/1
certainly [7]   12/20
13/14 17/14 19/10 28/3
38/11 43/11
certificate [1]   32/18
Certified [1]   45/13
certify [1]   45/13
cetera [2]   22/1 32/25
chamber [1]   33/14
chance [1]   23/19
change [1]   4/9
characterization [1]
20/24
characterized [1]
27/15
charged [1]   16/16
charging [1]   16/15
check [1]   32/23
checking [3]   5/2 5/6
5/9
checks [1]   18/25
chief [1]   18/18
children [1]   19/13
choose [1]   4/8
Circuit [1]   14/22
cite [1]   23/19
cited [2]   42/17 42/19
CJA [3]   14/2 14/7 14/9
classify [1]   27/17
clear [1]   3/18
cleared [1]   6/1
clearer [1]   10/24

clearing [1]   3/22
Clematis [1]   1/24
client [5]   18/7 18/11
18/21 18/24 33/1
client's [1]   18/9
close [5]   3/16 5/4
6/13 35/18 40/2
closing [1]   6/16
CM [1]   42/11
CM/ECF [1]   42/11
codefendants [1]   22/23
coerce [1]   37/20
collect [1]   7/25
collected [1]   2/16
collection [1]   8/13
come [8]   17/1 22/10
24/16 24/17 25/2 28/17
35/16 41/6
comes [1]   28/5
coming [2]   33/4 33/10
comment [1]   19/5
comments [1]   18/20
communicate [1]   38/3
communication [1]
18/15
community [1]   2/17
compacted [1]   35/19
compensation [1]   19/2
competing [1]   30/18
complete [1]   25/23
complexity [1]   2/19
composite [1]   45/3
concealed [1]   20/1
concept [1]   29/18
concern [3]   21/12 39/4
39/17
concerns [5]   35/8
37/19 37/21 37/23
37/23
concluded [1]   45/9
conclusions [1]   43/10
condition [2]   38/17
38/23
conduct [3]   2/13 3/1
3/1
confer [1]   24/15
conference [1]   32/18
conferring [1]   10/21
confront [3]   29/20
29/21 30/23
confrontation [2]   30/4
33/6
confronting [1]   30/6
conjunction [1]   4/17
connection [2]   2/12
14/9
considerations [3]
34/21 34/24 35/1
considering [2]   43/15
44/23
consignment [1]   5/4
Constitution [1]   29/19
consult [1]   4/10
contention [1]   38/22
continue [2]   33/12
33/12
continued [1]   13/19
contribute [1]   8/11
corporation [1]   22/1
corporations [1]   22/2
correct [2]   9/20 45/14
costs [7]   2/12 2/22

3/4 13/24 14/2 14/19
17/14
counsel [6]   2/4 2/24
10/21 24/18 29/3 40/6
country [1]   18/15
couple [10]   6/4 8/4
8/6 10/1 10/10 11/23
12/1 15/23 24/10 39/11
coupons [1]   12/8
course [3]   4/10 30/22
44/9
court [23]   1/1 1/23
2/1 2/21 2/22 16/17
16/23 23/5 23/10 25/5
26/14 26/15 31/7 33/4
38/6 38/7 40/8 40/22
41/9 44/2 44/6 44/7
44/21
court-appointed [1]
16/17
courtroom [3]   3/16
3/19 3/23
courts [2]   30/17 31/4
CR [1]   1/2
crazy [1]   19/14
crime [1]   43/2
criminal [5]   2/18 7/20
9/19 29/20 29/21
cross [4]   15/9 21/23
35/23 35/23
cross-examination [3]
15/9 21/23 35/23
cross-examine [1]
35/23
curse [1]   28/7
customarily [1]   2/17
customer [1]   12/23
Cynthia [1]   32/15

**D**

darn [1]   35/18
date [3]   38/8 38/13
39/24
Dated [1]   45/16
day [9]   18/10 18/13
18/13 19/12 19/12
33/10 35/15 36/23
45/16
day-to-day [2]   18/13
19/12
days [3]   24/10 42/19
42/20
DEA [1]   33/11
deadline [2]   34/22
34/22
deadlines [1]   33/25
deal [2]   19/12 33/20
December [2]   11/21
11/23
decide [1]   31/17
declared [3]   2/12 14/2
17/14
deductible [2]   27/20
27/21
defendant [17]   1/8 3/2
3/4 4/2 4/3 10/21
13/23 19/20 20/17 22/6
22/23 24/7 27/7 28/25
32/11 33/2 42/18
defendant's [4]   2/20
20/19 43/6 43/7
defendants [4]   1/17

32/12 32/15 43/2
Defender [1]   2/24
defense [17]   7/20 7/22
7/25 8/10 8/17 8/25
9/6 9/13 21/16 22/9
22/14 22/19 24/16
24/18 29/3 38/23 43/16
defenses [1]   18/6
defer [1]   24/25
definition [1]   26/5
delay [1]   35/15
delve [1]   30/25
deny [4]   30/7 30/8
30/15 31/13
denying [2]   30/14 31/7
dependent [1]   21/5
depending [1]   19/8
depends [1]   10/10
deposit [1]   9/12
deposition [7]   35/20
38/18 38/25 38/25
40/25 41/1 41/7
describe [1]   37/1
detail [1]   16/19
determination [3]
21/15 21/16 21/22
determine [3]   2/15
22/2 39/15
determining [1]   21/16
devastated [1]   22/22
Deveraux [14]   18/8
18/8 18/11 18/23 18/24
19/15 21/13 21/23
21/23 27/9 27/14 27/15
28/2 28/4
Deveraux's [1]   20/3
didn't [9]   3/6 3/8
8/20 17/19 19/24 23/18
33/4 35/12 43/19
different [4]   10/2
21/4 28/9 31/4
difficult [1]   22/16
digging [1]   23/20
Dillon [2]   9/10 9/12
direct [1]   2/22
directly [2]   4/17 4/19
disadvantage [1]   37/22
disagreed [1]   26/4
disclosing [1]   24/6
discovery [2]   26/9
28/16
discuss [2]   30/21
36/22
dismiss [1]   42/19
disposal [1]   23/14
disproportionate [1]
20/22
dispute [3]   19/19
19/21 23/4
disputes [1]   38/23
disregard [1]   2/20
distinction [1]   26/10
DISTRICT [2]   1/1 1/1
divide [1]   10/23
divulged [1]   26/22
Docket [2]   42/19 44/24
doctor [4]   32/24 32/25
39/5 39/15
document [3]   15/5
15/12 17/8
documentary [1]   30/23
documents [8]   15/6

**D**

documents... [7]   15/8
15/15 15/15 21/12 30/5
33/20 35/25
doing [4]   34/13 36/25
43/15 44/7
dollars [6]   6/4 8/4
18/22 18/24 19/10 20/2
donation [1]   8/21
donations [1]   7/22
door [2]   23/1 23/3
due [2]   6/14 42/10
duly [1]   4/3
duration [1]   2/18
duty [1]   41/8

**E**

e-mail [2]   35/14 38/16
earlier [2]   30/4 32/1
early [2]   18/10 41/10
earnings [2]   19/8 20/3
easier [3]   10/24 16/22
21/14
easiest [1]   44/19
East [1]   1/16
ECF [1]   42/11
effect [1]   35/16
efficiency [1]   36/12
efficient [4]   31/8
31/20 37/7 37/13
either [6]   4/17 5/22
27/18 29/11 38/14
44/10
Eleventh [1]   14/22
emergency [1]   35/15
employee [3]   21/3
29/13 29/14
employer [3]   21/1 21/3
21/5
enjoy [1]   17/2
enter [1]   38/7
entered [1]   43/20
entitled [5]   28/19
29/19 43/8 43/9 45/15
Entry [2]   42/19 44/24
equation [1]   31/5
ESQ [1]   1/18
establish [1]   39/2
estate [4]   5/15 6/18
6/19 6/20
estimate [1]   10/3
et [3]   1/7 22/1 32/25
et cetera [2]   22/1
32/25
ethnic [1]   43/1
eve [1]   35/18
event [2]   16/9 29/4
Exactly [2]   21/9 37/5
examination [3]   15/9
21/23 35/23
examine [3]   31/4 31/5
35/23
exceed [1]   12/16
excerpts [4]   42/24
43/5 43/6 43/18
exhibit [3]   38/20 45/1
45/3
exorbitant [3]   19/4
19/7 19/8
expedite [2]   38/5 38/8
expedited [4]   34/15

38/13 39/25 40/1
expend [1]   14/24
expense [3]   15/3 27/21
27/21
expenses [5]   2/20 2/22
14/1 15/3 28/13
expensive [1]   15/13
experience [1]   26/19
experienced [1]   36/18
expert [3]   14/21 15/4
29/9
experts [3]   14/13 17/9
43/23
explain [1]   3/5
extensive [3]   34/9
34/11 35/22
extremely [1]   37/8

**F**

face [1]   36/7
fact [4]   20/6 21/22
25/21 44/23
factor [2]   37/18 37/18
factors [1]   21/8
facts [2]   22/7 22/8
factual [3]   21/15
21/16 21/21
fair [2]   10/16 14/8
faith [1]   29/24
falls [1]   37/11
familiar [1]   27/1
family [3]   7/2 7/16
13/10
far [1]   36/17
FCRR [2]   1/23 45/18
February [1]   1/22
federal [3]   1/19 19/5
45/13
fee [5]   2/19 2/25 9/23
16/16 16/17
feel [7]   3/8 17/10
31/4 31/16 33/1 37/20
43/21
fees [7]   2/15 2/16
2/21 6/15 6/16 6/18
14/25
FERGUSON [1]   1/17
fertilization [1]
19/25
fifteen [2]   6/9 6/9
Fifth [2]   29/18 30/5
fighting [2]   37/10
41/16
figure [4]   8/3 18/22
34/20 39/24
figures [2]   22/9 22/10
file [3]   23/24 25/9
25/11
filed [7]   24/14 29/12
31/8 32/7 32/24 35/17
40/3
finances [1]   22/12
financial [1]   23/13
financially [1]   22/22
find [7]   13/22 13/23
19/7 20/10 30/16 31/3
40/14
fine [4]   18/23 24/21
40/15 40/17
first [5]   2/11 4/6
15/17 26/3 43/11
FLORIDA [5]   1/1 1/8

1/16 1/19 1/24
follow [2]   14/7 17/4
followed [1]   36/15
following [1]   44/21
food [2]   13/15 13/17
Footnote [1]   26/6
foregoing [1]   45/13
forget [2]   7/2 28/20
Forgetting [1]   27/5
forgive [2]   21/11 41/1
forgot [1]   43/20
form [1]   4/19
formed [1]   7/20
former [1]   37/2
Fort [1]   1/16
forth [3]   18/2 18/25
30/4
forward [2]   3/9 18/20
fought [1]   37/11
found [2]   23/18 23/19
four [2]   10/18 33/10
four-day [1]   33/10
frame [1]   40/4
FRED [2]   1/18 2/8
free [9]   12/6 12/7
12/7 12/21 13/3 37/20
41/8 41/9 41/15
Friday [10]   24/11
24/12 40/9 40/13 41/8
41/9 41/10 41/11 41/23
42/6
friends [2]   8/18 13/10
front [1]   42/25
full [3]   4/4 18/12
18/17
full-time [1]   18/17
fund [8]   7/20 7/23 8/1
8/10 8/17 8/25 9/6
9/13
funds [3]   8/16 9/12
9/15
further [3]   22/12 25/1
25/5

**G**

gamble [2]   12/4 12/8
gambling [2]   12/10
12/14
gest [1]   18/21
getting [1]   39/4
gift [4]   27/22 27/22
29/12 29/12
gifted [1]   29/11
gist [1]   26/17
give [5]   17/6 24/19
given [4]   15/6 15/7
15/8 29/13
gives [2]   23/10 40/2
giving [3]   3/10 34/22
44/2
glad [1]   36/20
go [14]   3/9 7/21 10/5
10/8 11/12 13/21 14/22
18/20 23/22 26/21 36/1
36/2 37/12 39/9
going [40]   10/17 11/9
11/23 12/1 15/22 16/14
16/21 17/6 19/14 19/18
19/18 19/21 21/15
21/19 22/19 25/18
27/24 28/7 28/7 30/7

30/8 31/10 32/10 32/20
33/3 33/15 33/22 33/23
34/2 34/3 34/7 34/10
35/16 36/5 37/3 38/5
38/5 38/6 41/5 42/11
good [6]   2/5 2/7 2/8
16/24 29/24 33/16
gotten [2]   26/15 26/16
government [33]   1/14
3/2 5/17 15/6 18/4
19/14 20/1 20/14 20/18
21/18 22/4 26/5 26/6
26/9 26/11 26/12 26/14
26/23 26/23 27/6 27/12
27/24 28/14 30/10
30/21 33/22 36/13
36/14 37/12 37/17 40/1
42/25 44/12
government's [10]
17/15 17/24 19/17 26/5
26/19 34/10 43/17
44/11 44/12 44/14
grand [5]   42/17 42/19
43/1 43/15 45/2
grandson's [3]   9/5 9/6
9/9
grant [1]   31/15
granted [2]   36/5 36/11
graphics [1]   15/13
great [2]   25/4 32/4
grist [1]   42/3
gross [2]   20/24 26/
group [1]   21/19
guess [3]   23/4 26/4
34/8
Guide [1]   2/23
guidelines [2]   14/3
14/19
gypsy [1]   43/2

**H**

half [1]   15/9
hand [1]   34/12
handle [2]   18/13 18/16
handling [1]   20/11
happen [1]   31/21
happened [1]   15/2
happens [1]   22/24
happy [4]   24/1 31/4
31/11 41/22
hard [10]   10/5 10/9
10/17 11/9 11/12 11/24
12/1 12/22 22/7 22/8
hauling [1]   16/22
he'll [1]   15/21
hear [3]   25/1 35/12
44/14
heard [1]   35/16
hearing [20]   1/10 2/13
2/14 2/15 3/12 3/13
23/23 23/10 33/11 34/8
36/7 40/8 40/9 40/12
40/13 40/20 40/23
40/25 41/10 41/19
hearings [1]   33/23
held [3]   9/15 44/20
44/21
help [3]   8/19 18/13
19/11
helped [6]   7/17 7/18
19/23 19/24 27/10
27/10

**H**

highest [1]  8/21
highly [1]  36/11
Highway [1]  1/19
hired [1]  9/19
history [2]  19/20
  19/20
hold [1]  35/20
Hollywood [1]  18/16
Honor [25]  2/5 2/7 2/8
  4/22 10/22 12/19 13/12
  14/6 15/1 17/12 17/24
  18/2 18/7 26/1 27/8
  30/13 31/6 31/20 34/17
  40/11 41/19 42/5 44/16
  45/1 45/5
HONORABLE [1]  1/11
hoping [1]  34/19
HOPKINS [2]  1/2 1/11
horse [1]  23/18
hospital [1]  32/25
hour [2]  14/11 14/25
hourly [1]  14/11
hours [2]  16/20 18/10
house [15]  5/23 6/7
  6/17 6/21 6/25 7/1
  10/4 10/23 10/24 11/3
  11/9 11/13 11/14 11/16
  11/22
huh [1]  7/21
hundred [2]  6/3 6/5

**I**

I'll [17]  3/15 15/16
  17/4 17/8 24/17 24/25
  25/14 31/9 31/15 31/17
  31/17 31/25 40/5 41/2
  41/10 41/22 42/2
I'm [50]  2/23 3/10
  5/19 6/9 9/21 10/12
  10/14 11/20 12/13
  12/15 14/13 16/14
  16/25 18/14 18/14
  19/14 20/13 21/11
  22/17 27/1 30/7 30/8
  31/3 31/4 31/11 33/7
  33/19 33/21 34/4 34/9
  35/10 37/3 37/22 38/4
  38/4 38/4 38/5 39/8
  39/10 39/21 39/23 41/5
  41/8 41/9 41/20 41/22
  42/11 42/16 42/21
  44/11
I've [6]  15/1 17/25
  23/18 26/4 29/23 39/3
idea [1]  23/7
ideal [1]  30/22
ideas [2]  19/23 38/13
ignorance [1]  34/21
imagine [1]  15/22
immediately [1]  18/9
impeach [1]  29/4
impeaching [1]  29/22
impeachment [5]  23/15
  23/21 25/22 25/24
  28/17
impending [1]  32/19
inappropriate [1]
  23/12
incapacitated [1]  39/6
included [3]  17/21

43/5 43/7
including [1]  16/13
income [3]  20/22 22/19
  24/6
incorporate [1]  34/4
indexing [1]  15/14
indicate [1]  42/10
indicated [1]  34/18
indictment [4]  10/17
  10/19 10/20 28/6
indigency [3]  3/2 3/3
  3/25
indigent [4]  2/12
  13/24 14/2 17/14
indirectly [2]  4/17
  21/4
individual [1]  39/6
industry [2]  20/25
  21/6
information [9]  19/23
  20/7 20/9 23/14 26/13
  26/23 27/2 43/15 44/3
initial [1]  43/21
inquiry [4]  3/1 3/2
  3/3 27/25
instances [1]  22/21
interaction [1]  22/22
interactions [1]  24/7
interest [1]  30/20
interested [1]  43/3
interests [3]  22/17
  30/18 30/19
interim [2]  38/9 40/7
internet [1]  8/11
interrupt [1]  39/9
intervene [1]  41/5
intervention [1]  25/6
intrusion [1]  22/12
invasion [1]  25/23
investigation [2]
  26/10 28/1
investigator [3]  9/20
  16/13 16/14
investigators [2]  10/2
  14/13
investments [1]  5/13
involved [2]  33/2
  34/21
involves [1]  20/25
involving [1]  39/18
IRS [3]  26/13 26/18
  29/16
issue [5]  23/1 26/2
  32/5 34/20 34/22
it's [28]  14/11 14/12
  14/23 19/18 19/18
  19/21 20/25 21/5 21/13
  21/17 21/18 21/18
  23/12 28/16 28/24
  32/15 33/10 33/18 36/4
  36/10 37/23 40/14
  43/15 43/16 43/21 44/7
  44/23 45/3

**J**

JAMES [1]  1/11
January [1]  11/23
Japan [4]  35/24 35/25
  36/1 36/2
Japanese [2]  35/20
JM [1]  23/4
job [1]  44/7

jocular [1]  18/19
judge [31]  1/12 3/8
  13/11 14/20 15/2 15/11
  15/19 16/3 17/17 19/5
  20/20 21/10 24/21
  25/16 29/7 30/3 31/23
  32/5 33/1 33/9 33/11
  35/8 37/22 39/21 40/21
  41/17 42/2 42/12 43/7
  43/11 43/22
judges [2]  29/23 44/2
Judiciary [1]  2/23
jury [8]  19/7 21/14
  21/20 42/17 42/19 43/1
  43/15 45/2
justification [1]  17/7
justifications [1]
  17/9

**K**

KEECHL [1]  1/18
keep [5]  3/21 9/3 9/3
  9/3 17/8
kept [2]  18/4 29/13
kind [7]  14/10 22/8
  22/10 24/16 25/2 26/13
  38/13
knew [2]  8/14 35/16
know [47]  7/4 8/19
  12/17 14/3 14/8 16/2
  16/19 17/6 17/10 17/17
  19/13 19/15 22/13
  22/18 23/2 26/8 26/12
  27/22 28/4 28/5 29/17
  32/17 34/12 34/18
  34/18 34/21 34/23
  34/23 35/21 36/5 36/6
  36/7 36/14 36/17 36/18
  36/24 36/25 37/9 37/10
  37/15 37/19 38/4 38/4
  38/20 39/23 43/25 44/3
knowledge [1]  27/3
KOPELOWITZ [1]  1/17

**L**

large [2]  19/19 20/15
Larry [1]  2/6
late [1]  36/22
Lately [1]  31/24
Lauderdale [1]  1/16
LAURENCE [1]  1/15
law [2]  30/10 33/11
lead [1]  42/24
least enter [1]  38/7
leaves [1]  6/13
legal [2]  9/23 27/3
legitimate [5]  28/22
  29/8 36/8 37/21 44/3
letter [1]  39/13
life [2]  27/12 27/14
limit [1]  16/7
line [1]  23/13
lines [1]  14/13
litigator [1]  36/18
little [2]  6/4 36/16
live [2]  40/4 40/5
loath [1]  38/4
local [1]  14/10
logistical [1]  35/21
logistically [1]  40/17
long [5]  3/15 14/24
  16/6 24/8 28/21

look [6]  14/19 19/1
  27/23 39/5 39/15 44/5
looking [2]  33/7 42/21
losses [2]  12/14 12/16
lot [2]  15/6 16/21
  21/14
lots [1]  27/1
loud [1]  7/12
Lubin [12]  33/3 34/12
  35/2 35/14 35/22 35/25
  37/24 38/15 39/4 39/7
  40/21 41/14
Lubin's [3]  36/21
  38/12 39/4
lunchtime [1]  41/13
lying [1]  29/1

**M**

ma'am [2]  10/5 11/3
MAGISTRATE [1]  1/12
magnitude [1]  20/8
mail [2]  35/14 38/16
main [1]  33/2
making [6]  20/8 20/15
  20/23 21/1 21/2 21/5
malevolent [1]  27/13
manage [3]  9/1 9/2
  19/11
managed [1]  8/25
management [3]  15/5
  15/12 17/8
manner [1]  37/7
March [2]  1/8 45/16
MARKS [21]  1/7 1/18
  1/18 2/3 2/9 4/5 4/6
  5/23 9/10 9/12 19/16
  19/22 20/3 27/9 27/16
  28/1 28/4 28/12 29/6
  29/6 29/11
Marks' [2]  28/12 42/18
MARRA [8]  1/2 14/20
  15/2 15/11 15/19 43/7
  43/11 43/22
material [5]  23/21
  25/22 25/24 28/17 29/3
matter [4]  19/19 32/20
  39/18 45/15
matters [4]  2/18 27/10
  27/11 31/1
May 19 [1]  42/23
mean [17]  4/16 14/10
  20/6 26/23 28/19 28/20
  34/21 36/16 36/24 37/9
  37/20 38/11 39/19
  43/19 43/20 43/22 44/4
means [1]  23/8
meant [1]  35/13
medical [5]  38/17
  38/23 39/5 39/11 39/14
meet [2]  36/21 37/12
members [1]  43/2
memorandum [2]  30/10
  41/18
mention [1]  19/24
merely [1]  38/25
merit [1]  37/11
met [1]  18/7
mid [1]  38/10
mill [1]  42/4
Miller [1]  32/15
million [7]  5/24 6/12
  18/22 18/24 19/10 20/2

**M**

million... [1]   21/13
mind [4]   3/22 4/9 17/8
33/15
minimal [1]   7/24
minutes [1]   3/15
moment [3]   2/10 12/19
44/15
Monday [1]   15/17
money [9]   5/5 9/4 12/5
19/19 20/16 23/5 28/8
28/8 29/11
month [5]   11/16 11/17
13/18 34/8 39/11
months [1]   35/17
moot [1]   45/4
morning [1]   15/17
mortgage [1]   6/6
motion [27]   1/10 2/11
3/6 13/25 16/10 16/13
17/11 17/13 17/16
17/23 18/3 18/20 19/5
25/16 30/7 31/8 32/7
32/8 32/21 32/24 34/10
35/16 36/4 36/8 36/11
42/18 45/3
motions [4]   2/11 15/16
16/6 43/6
motive [2]   29/8 29/8
motives [3]   28/20
28/21 28/22
move [1]   3/25
Mr [7]   9/23 29/17
29/23 32/13 35/8 35/14
41/4
Mr. [33]   6/7 6/12
10/22 13/25 18/19 26/5
29/6 29/6 29/6 30/1
31/8 32/17 32/20 33/3
34/12 35/2 35/7 35/9
35/14 35/22 35/25
36/21 36/22 37/24
38/12 38/15 39/4 39/4
39/10 39/17 40/21
40/21 41/14
Mr. Lubin [11]   33/3
34/12 35/2 35/22 35/25
37/24 38/15 39/4 39/17
40/21 41/14
Mr. Lubin's [3]   36/21
38/12 39/4
Mr. Marks [2]   29/6
29/6
Mr. Schwartz [4]   13/25
29/6 32/17 32/20
Mr. Stefin [10]   10/22
18/19 26/5 30/1 31/8
35/7 35/14 36/22 39/10
40/21
Mr. Stefin's [1]   35/9
Mr. Wolofsky [2]   6/7
6/12
Mrs. [2]   19/16 27/9
Mrs. Marks [2]   19/16
27/9
Ms [1]   23/4
Ms. [25]   4/6 5/23 18/8
18/8 18/11 18/23 18/24
19/15 19/22 20/3 20/3
21/13 21/23 21/23 27/9
27/14 27/15 27/16 28/1

28/2 28/4 28/4 28/12
28/12 29/11
Ms. Deveraux [14]   18/8
18/8 18/11 18/23 18/24
19/15 21/13 21/23
21/23 27/9 27/14 27/15
28/2 28/4
Ms. Deveraux's [1]
20/3
Ms. Marks [9]   4/6 5/23
19/22 20/3 27/16 28/1
28/4 28/12 29/11
Ms. Marks' [1]   28/12

**N**

name [7]   4/4 7/2 9/5
9/7 9/9 9/12 23/4
Nancy [1]   1/18
narrow [1]   22/5
nature [1]   21/7
necessary [2]   40/14
43/21
need [20]   3/9 4/6 14/1
14/16 17/10 18/3 18/12
19/13 19/15 21/22 22/2
22/7 24/10 25/5 26/13
27/15 28/3 31/16 39/19
43/12
needing [1]   16/20
needs [4]   22/6 33/5
40/8 41/20
negotiated [1]   18/21
net [4]   16/21 19/8
21/25 22/20
never [1]   33/15
newspaper [1]   27/25
nickel [2]   7/11 7/14
noon [2]   41/23 42/7
Nope [1]   41/25
normally [3]   2/13 3/6
44/1
note [3]   13/25 32/24
38/19
notebook [1]   17/20
notice [3]   23/24 25/9
45/4
noticed [1]   42/16
notified [1]   27/24
number [5]   19/14 21/14
27/11 29/23 44/1
numbers [2]   19/2 23/9

**O**

o'clock [1]   41/9
oath [2]   4/7 29/1
object [1]   38/18
objecting [2]   16/4
22/20
objection [2]   38/16
38/21
objections [5]   15/25
16/5 33/22 34/3 34/4
obligations [1]   26/9
obstruct [1]   37/3
obstructionist [1]
37/6
obviously [11]   17/6
17/10 30/18 30/19
31/18 32/19 33/5 34/16
36/24 37/19 40/18
occasions [1]   39/11
October [3]   11/18

11/19 11/20
offer [1]   12/8
offered [1]   33/3
offers [1]   12/7
Offhand [1]   8/2
Official [1]   1/23
Oh [1]   17/22
okay [25]   3/14 3/22
5/17 6/11 7/9 7/15
11/1 11/2 15/18 17/5
17/22 18/2 24/3 24/8
24/23 25/7 25/13 25/25
32/2 32/9 36/14 38/2
41/24 42/6 44/23
old [1]   19/6
once [7]   13/4 13/4
14/1 14/4 14/5 14/6
15/2
one-page [1]   39/13
open [6]   9/11 9/17
23/3 23/5 31/3 44/21
opened [2]   5/3 13/2
opening [1]   23/1
operate [1]   44/2
opinion [2]   36/6 44/8
opportunity [4]   18/1
23/10 24/4 44/5
opposing [1]   44/13
option [1]   3/11
order [16]   2/1 2/21
21/21 26/12 26/14
26/14 26/15 28/16
34/20 34/22 38/7 39/20
39/24 40/1 40/13 42/9
organized [1]   43/2
original [1]   43/1
OSTROW [1]   1/17
outside [1]   3/15

**P**

p.m [2]   1/9 45/9
page [6]   16/7 26/6
39/13 42/21 42/23
42/23
Page 3 [1]   26/6
Page 36 [1]   42/23
Page 67 [1]   42/23
Page 7 [1]   42/21
Pages [1]   42/22
paid [11]   2/17 6/20
6/23 7/6 7/7 7/17 9/22
9/25 18/24 27/14 27/22
paint [1]   43/1
Palm [2]   1/8 1/24
paper [1]   16/22
papers [1]   19/5
paperwork [1]   35/22
paralegal [4]   35/6
38/2 38/12 39/3
Pardon [1]   7/13
parroting [1]   39/21
part [7]   2/22 7/18
9/23 25/15 25/17 26/18
29/7
particularly [3]   30/21
31/1 44/7
parties [1]   34/19
pay [7]   2/21 6/8 6/12
7/16 19/10 20/3 21/3
paying [2]   19/9 20/10
payment [1]   28/6
payments [4]   27/16

27/18 28/4 28/24
pending [1]   41/25
people [5]   7/18 8/11
8/14 8/18 22/21
people's [1]   22/19
period [4]   10/23 19/15
20/16 23/6
peripherally [1]   33/2
perjury [1]   29/2
permissible [1]   28/24
permitted [1]   5/19
person [4]   8/22 19/9
20/10 21/1
personal [2]   27/11
27/20 29/14
persuade [1]   30/11
pertinent [1]   35/3
physically [1]   27/5
pick [1]   37/7
piggyback [1]   41/19
Pitt [2]   19/10 20/10
Plaintiff [1]   1/5
plan [1]   18/5
planning [1]   34/9
play [5]   12/6 12/7
12/7 12/21 13/3
pleadings [1]   43/7
please [5]   2/2 2/4 4/2
4/4 12/19
point [4]   7/19 18/10
19/17 40/9
points [1]   38/22
Policy [1]   2/23
politician [1]   18/17
portion [3]   3/3 3/16
4/1
portions [1]   42/20
position [8]   22/14
28/15 30/12 32/17
43/17 44/11 44/12
44/14
possession [1]   26/7
possible [1]   36/16
possibly [1]   23/15
potential [1]   23/21
practitioners [1]   2/17
prefer [1]   3/12
prejudice [2]   30/8
30/15
prepare [1]   33/19
preparing [1]   34/13
presentation [1]   28/11
presenting [1]   15/15
presently [1]   13/6
press [2]   43/8 44/5
presumption [4]   43/9
43/11 43/25 44/4
pretty [3]   15/23 18/5
35/18
prevent [1]   28/2
price [1]   18/21
prior [1]   11/8
privacy [2]   22/18
25/23 30/20 30/25
private [1]   10/2
probably [10]   3/14
10/18 15/4 15/9 19/2
20/15 21/5 26/12 41/10
41/14
problem [3]   24/5 25/8
33/9
problems [4]   18/13

**P**

problems... [3]   19/12
  33/6 35/21
procedures [3]   36/15
  36/22 36/23
proceed [1]   14/2
proceeding [3]   3/7 3/9
  4/1
proceedings [5]   3/24
  44/20 44/21 45/9 45/14
proceeds [1]   10/4
produce [1]   29/16
produced [1]   30/10
Professional [1]   45/12
proffered [1]   28/18
proof [2]   30/23 38/17
proper [1]   23/20
properly [3]   21/11
  39/20 44/7
properties [1]   19/11
property [1]   6/15
prosecution [3]   26/10
  26/24 29/2
protect [1]   22/17
prove [1]   30/19
provide [1]   34/14
provides [1]   14/10
proxies [1]   4/18
psychic [1]   43/3
public [4]   43/8 43/18
  44/5 44/13
purpose [1]   23/20
purposes [4]   15/9
  23/15 28/3 44/9
pursuant [2]   27/18
  32/18
pushed [1]   16/22
put [10]   3/6 7/17 7/18
  8/19 16/9 16/12 17/10
  32/6 42/11 43/12
putting [3]   23/17
  43/17 44/13

**Q**

qualifications [1]
  16/15
qualified [1]   2/17
qualifies [1]   3/4
qualify [1]   36/9
question [6]   11/11
  13/13 22/16 29/24
  29/25 38/24
questions [3]   4/11
  5/18 41/20
quickly [1]   33/7
quite [2]   29/17 30/2
quote [1]   43/4

**R**

R's [2]   16/1 33/16
ran [2]   27/11 27/14
rare [1]   2/10
rates [1]   14/11
rationale [1]   18/3
Raton [1]   1/19
re-examine [1]   31/5
reach [1]   40/18
reading [2]   2/23 15/25
real [4]   5/15 6/18
  6/19 6/20
really [9]   8/24 14/10

21/18 23/14 25/24 30/8
  34/23 37/23 40/21
Realtime [1]   45/13
reason [5]   27/8 28/18
  31/6 44/4 44/10
reasonable [9]   2/19
  20/3 20/9 20/12 20/21
  21/3 21/17 21/18 21/19
reasons [4]   27/3 30/17
  36/5 37/16
recall [1]   28/11
receive [1]   13/17
received [4]   8/22
  16/16 19/1 19/1
recommendation [2]
  17/3 42/18
reconvene [1]   31/17
record [9]   3/17 35/6
  43/13 43/18 43/18
  44/10 44/13 44/24
  45/14
records [8]   23/13
  25/16 26/7 27/7 29/16
  39/5 39/11 39/14
refer [1]   15/21
referenced [1]   44/8
refused [1]   33/12
Registered [1]   45/12
regular [1]   12/22
regularly [2]   10/5
  11/9
related [1]   21/4
relation [3]   2/16 28/1
  30/21
relationship [2]   18/11
  20/16
relative [1]   22/7
relatively [1]   36/8
relatives [1]   7/16
rely [1]   25/18
remain [2]   4/9 5/21
remember [8]   6/10 8/2
  8/5 8/24 11/16 14/14
  14/15 14/18
renew [1]   30/8
repair [2]   7/6 7/8
reply [5]   18/1 26/2
  31/9 31/16 31/18
Report [1]   42/18
reported [1]   29/12
Reporter [4]   1/23 1/23
  45/12 45/13
represent [1]   38/15
request [3]   25/22 30/9
  43/20
requesting [1]   41/21
requests [1]   27/3
required [1]   29/16
research [3]   30/16
  32/23 34/13
researching [1]   32/25
resolve [4]   22/5 24/9
  40/6 40/7
resources [1]   36/2
respond [1]   32/21
  33/20 39/20
responded [1]   38/16
responding [1]   34/3
response [15]   17/15
  17/24 25/19 26/6 30/11
  34/9 34/14 34/23 38/8
  39/25 40/1 40/3 40/13

40/16 42/10
responses [3]   33/22
  36/7 36/10
rest [1]   26/11
result [1]   22/22
retained [2]   2/21 2/24
return [4]   27/19 28/8
  29/10 29/12
returns [8]   25/23
  27/16 28/9 28/10 28/25
  30/1 30/22 31/1
review [2]   16/6 43/12
reviewed [1]   17/25
right [22]   5/2 15/24
  16/11 16/18 17/13
  20/18 25/17 28/2 28/10
  29/15 30/4 31/14 32/15
  32/16 34/6 35/4 35/11
  37/25 40/10 40/19 41/4
  45/2
ripen [1]   33/8
Rock [8]   10/6 10/9
  10/17 11/9 11/12 11/24
  12/1 12/22
ROGER [2]   1/14 2/5
roof [2]   7/6 7/7
ROSE [6]   1/7 1/18 2/3
  2/9 4/5 42/18
roughly [2]   18/24 19/2
royalty [1]   18/25
RPR [2]   1/23 45/18
Rs [1]   33/21
rule [2]   14/10 23/20
Rule 17 [1]   23/20
rules [4]   14/7 14/9
  17/11 27/1
ruling [2]   24/25 25/1

**S**

safe [1]   24/11
sake [1]   36/12
sale [8]   6/1 6/21 6/24
  10/23 10/24 11/9 21/24
  21/25
satisfactory [1]   22/11
save [1]   42/2
saw [1]   32/8
saying [6]   9/11 16/14
  20/13 21/13 22/6 26/15
says [6]   26/6 28/6
  29/4 29/10 29/19 31/16
schedules [1]   27/17
scheduling [1]   34/25
Schuster [1]   21/13
SCHWARTZ [8]   1/18 2/9
  9/23 13/25 29/6 29/23
  32/17 32/20
seal [1]   3/16
sealed [7]   3/6 3/6 3/9
  3/24 16/10 44/10 44/20
seated [2]   2/2 5/21
SEC [1]   39/18
second [1]   35/5
secondhand [1]   39/13
secrets [1]   18/4
Section [1]   2/24
Section 310.10.20 [1]
  2/24
sections [1]   42/17
see [12]   14/19 21/14
  23/10 24/16 27/15
  28/10 28/16 31/16

38/12 39/5 39/14 42/6
seek [1]   25/21
seeking [5]   20/7 20/7
  20/8 23/14 25/24
seen [2]   17/15 36/9
sell [2]   7/1 11/3
sense [2]   36/13 38/13
sent [1]   8/13
separate [1]   9/24
September [1]   11/20
serious [3]   37/15
  37/16 37/19
service [2]   15/5 15/12
services [3]   2/18 2/24
  21/7
set [6]   8/10 18/2 30/4
  40/8 40/12 41/10 41/13
  41/22 44/22
shape [1]   4/19
share [1]   4/20
shop [1]   5/4
shortened [1]   34/22
shoulder [1]   44/6
show [2]   35/24 38/20
Sidebar [1]   44/19
sides [1]   34/24
silent [1]   4/9
silly [1]   14/11
similar [3]   2/18 15/13
  30/16
Simon [1]   21/12
simply [3]   20/25 38/8
  43/21
sir [5]   8/15 8/24
  10/12 12/3 16/24
situation [3]   2/15
  16/17 22/24
situations [1]   30/17
small [2]   32/23 42/20
sold [4]   5/23 6/11
  11/13 11/14
solicit [1]   8/16
solicitations [1]   8/14
somebody [6]   3/20 14/1
  18/12 18/17 18/18 37/6
somewhat [4]   18/19
  18/21 31/7 32/23
sorry [6]   9/21 10/13
  11/20 35/10 39/8 42/16
sort [1]   18/18
sotto [1]   10/21
sound [2]   19/4 19/21
sounds [1]   35/2
South [1]   1/19
SOUTHERN [1]   1/1
speak [2]   35/7 38/12
speaking [1]   38/15
specific [2]   27/2 27/3
spend [1]   7/15
spiritual [1]   28/6
sponte [1]   43/14
staff [1]   18/18
stage [2]   31/13 31/15
stamps [2]   13/15 13/17
stand [1]   5/21
star [1]   33/14
started [2]   11/23
  34/13
state [2]   4/4 7/3
statement [2]   26/17
  42/25
statements [1]   4/8

**S**

STATES [7]   1/1 1/4
1/15 2/3 2/6 27/6
29/19
statutory [1]   14/12
stealing [1]   43/3
STEFIN [12]   1/14 2/5
10/22 18/19 26/5 30/1
31/8 35/7 35/14 36/22
39/10 40/21
Stefin's [2]   29/17
35/9
step [2]   3/5 3/15
stereotyping [1]   43/1
stipulate [4]   20/1
20/12 22/13 23/11
stipulated [1]   20/6
stipulation [1]   24/9
stocks [1]   5/12
stopped [2]   13/20
13/21
storing [1]   15/14
straightforward [1]
18/5
Street [1]   1/24
strike [1]   11/7
struggling [1]   19/6
stupid [1]   37/10
sua [1]   43/14
subject [1]   29/1
submit [1]   31/25
submitted [1]   30/9
subpoena [2]   27/7 27/8
subpoenaing [1]   20/9
23/12
subpoenas [5]   17/16
17/23 23/20 25/21
41/20
subsequently [1]   44/9
substantial [1]   23/5
sufficient [3]   28/22
38/17 39/14
suggest [7]   27/13 30/3
31/10 33/5 36/3 36/4
40/22
suggested [2]   15/6
32/1
suggestion [1]   36/10
suggests [1]   27/12
Suite [1]   1/24
sums [3]   19/19 20/16
23/5
supplemental [7]   23/25
25/10 25/11 25/12
25/18 25/20 31/25
support [1]   30/9
supporting [1]   13/5
suppose [1]   32/11
supposed [1]   14/23
sure [7]   6/9 12/15
16/25 19/14 26/3 33/21
41/22 42/13 44/6
Surprisingly [1]   18/2
swear [1]   4/2
sworn [1]   4/3
system [3]   44/2 44/6
44/7

**T**

Tab [2]   17/23 17/24
Tab 3 [1]   17/24

take [5]   3/14 14/18
27/18 28/7 36/1
talented [2]   37/8 37/9
talk [6]   13/25 24/5
26/9 35/9 38/14 40/6
talks [1]   18/19
Tanya [2]   4/2 14/15
taught [1]   29/21
tax [17]   25/16 25/22
26/2 26/7 26/13 27/16
27/19 27/22 28/1 28/9
28/10 28/25 29/9 29/12
30/1 30/22 31/1
taxes [3]   6/14 6/15
6/15
team [4]   26/10 26/11
26/19 26/24
tell [3]   4/14 22/14
36/17
telling [1]   43/22
ten [1]   13/1
testify [2]   28/12 29/9
testifying [1]   30/24
testimony [3]   11/25
29/22 42/25
Thank [12]   17/12 31/12
42/8 42/12 42/13 42/14
42/15 44/18 45/5 45/6
45/7 45/8
Thanks [1]   17/22
theory [1]   30/3
thereabouts [1]   35/17
thereto [1]   15/14
thing [6]   15/17 19/22
21/4 33/16 35/11 42/16
things [5]   12/8 18/3
36/25 37/7 37/10
think [37]   6/18 8/9
11/15 12/12 12/13
15/11 16/5 16/6 17/5
19/6 19/17 20/14 22/6
22/8 22/11 22/20 23/12
24/10 26/8 26/14 26/17
30/25 34/2 34/3 34/14
35/17 35/25 36/4 36/10
36/11 36/22 37/8 42/1
42/3 43/10 43/23 44/24
thinks [1]   40/8
thought [3]   29/18
43/20 43/21
thousand [6]   6/4 6/9
6/9 8/4 8/6 8/23
three [9]   6/3 6/5
10/18 12/2 24/21 35/19
42/19 42/20 43/17
threw [1]   18/22
Thursday [4]   40/2 40/7
40/13 42/10
tied [2]   15/23 39/18
time [18]   4/8 15/11
18/12 18/17 19/16 23/6
30/11 32/3 36/1 36/16
37/10 37/18 37/18
38/19 40/3 41/14 41/18
41/23
times [5]   10/10 10/18
11/24 12/1 12/2
Tjoflat [2]   2/14 3/12
today [6]   24/11 24/11
32/6 33/4 35/7 40/9
token [1]   37/16
told [2]   39/3 39/10

tool [1]   28/16
torch [1]   38/1
totals [1]   19/2
track [2]   9/3 9/4
traffic [1]   41/16
transcribed [1]   3/24
transcript [6]   1/10
42/22 42/23 42/23 43/5
45/14
transcripts [5]   42/17
42/20 42/24 43/17 45/2
transpired [1]   31/18
travel [2]   39/7 39/16
traveling [1]   18/15
treat [1]   27/19
treated [8]   27/9 27/20
27/21 27/22 28/4 28/13
28/24 29/10
trial [16]   2/20 15/2
15/12 15/16 17/20
23/20 25/21 28/3 32/19
33/19 35/18 35/19 36/2
39/1 39/2 42/2
tried [1]   33/11
truthful [1]   22/2
try [8]   22/5 24/17
37/3 37/12 38/9 40/6
40/6 41/12
trying [7]   14/14 22/17
33/19 33/19 39/24 42/1
44/11
turn [1]   30/1
turned [1]   43/16
two [7]   12/2 15/3 15/4
16/8 35/17 36/21 36/25

**U**

U.S [1]   1/12
ugly [1]   33/13
Uh [1]   7/21
Uh-huh [1]   7/21
ulterior [3]   28/20
28/21 29/8
unable [1]   39/6
unavailability [1]
39/2
uncomfortable [1]   33/1
understand [9]   3/8
4/12 11/11 21/10 29/17
30/3 34/1 37/18 39/23
undisputed [1]   20/13
unfortunately [1]   16/7
UNITED [7]   1/1 1/4
1/15 2/3 2/6 27/6
29/18
unquote [1]   43/4
unreasonable [1]   20/21
unsealed [1]   44/10
use [3]   12/7 12/9 23/4

**V**

valued [1]   4/20
varied [1]   18/25
various [2]   15/16
27/16
venture [1]   36/6
verbal [2]   38/7 42/9
versus [1]   2/3
viable [1]   21/17
victim [7]   19/19 20/8
20/13 20/15 22/12
22/23 23/22 24/5 26/17

victim's [3]   22/18
26/7 30/20
video [1]   38/18
view [5]   36/25 37/2
37/5 37/6 43/9
viewed [1]   43/10
views [1]   39/22
VII [1]   2/24
vitro [1]   19/24
voce [1]   10/21
Volume [1]   2/23
voluntarily [1]   26/16

**W**

W-2 [1]   27/18
wait [1]   31/9
want [22]   3/18 3/20
8/19 14/18 16/16 17/1
18/1 18/11 23/3 23/24
24/8 24/19 25/9 26/2
30/16 32/22 32/23
34/15 35/8 35/12 36/14
38/12
wanted [1]   43/16
wants [3]   29/3 35/22
36/1
waste [2]   36/16 37/10
way [7]   4/19 5/22 13/7
27/13 27/13 29/20
44/19
ways [2]   15/16 36/25
we've [2]   15/8 18/5
wealthy [1]   18/16
Wednesday [3]   24/13
24/20 25/1
week [17]   10/10 10/18
11/24 12/1 12/2 13/4
24/13 33/10 33/17 34/8
38/10 39/19 40/2 40/9
40/22 40/23 41/19
weeks [3]   15/23 24/22
35/19
WEISELBERG [1]   1/18
welcome [1]   3/3
well [46]   3/10 3/25
4/14 4/23 5/20 6/6
7/21 8/3 11/6 11/15
12/6 13/23 18/2 19/22
20/5 21/25 22/4 22/16
22/25 23/2 23/7 24/15
24/23 26/1 26/12 26/20
28/15 28/18 30/7 30/15
32/1 32/13 32/14 32/22
33/14 33/24 34/25 36/3
36/24 38/2 39/8 41/2
43/8 43/12 43/19 43/25
went [2]   7/18 13/1
16/7
were [12]   2/16 6/14
9/15 10/17 11/9 12/21
19/6 22/21 28/7 28/13
44/20 44/21
West [2]   1/8 1/24
whichever [1]   15/20
whole star [1]   33/14
willing [1]   22/13
winnings [2]   12/10
12/16
wish [3]   4/10 16/10
27/7
withdraw [1]   33/15
witness [8]   28/23 29/9

**W**

**witness... [6]**   29/21
 30/23 30/24 33/3 35/20
 35/25
**witness' [1]**   30/2
**witnesses [3]**   15/4
 29/20 30/6
**Wolofsky [2]**   6/7 6/12
**word [3]**   20/20 20/21
 20/21
**words [1]**   35/15
**work [8]**   18/11 18/16
 36/23 37/17 38/9 41/2
 41/3 41/12
**worked [1]**   38/9
**working [1]**   9/20
**world [3]**   4/15 4/20
 30/22
**worried [1]**   22/25
**worth [3]**   4/15 19/8
 22/20
**write [2]**   34/13 35/19
**writing [2]**   23/5 34/10
**written [2]**   17/11 38/7
**wrong [2]**   20/20 28/21

**Y**

**yeah [3]**   8/7 10/15
 12/13
**year [7]**   5/24 18/22
 18/24 19/10 20/2 21/13
 28/8
**years [6]**   10/2 13/2
 18/23 24/6 27/11 28/9
**yesterday [2]**   32/7
 40/3